**THIRD DIVISION**
**DILLARD, C. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 25, 2019**

# In the Court of Appeals of Georgia

A19A0139. CALLAWAY v. WILLARD.

DILLARD, Chief Judge.

William Callaway appeals the trial court's grant of partial summary judgment

to Lucinda Durham Willard ("Lucinda")[1] in her action against Callaway, individually

---

[1] Because many of the relevant parties share the same last name, it is helpful to identify them at the outset. Two of Lucinda's brothers, Hugh "Lee" Durham and Wallace "Bryant" Durham, were parties below and have filed a joint appellee brief, in which they adopt Lucinda's brief in its entirety, asserting that "[t]he law and the facts applicable to all three [siblings] are exactly the same." Similarly, below, Lucinda submitted all of the relevant summary-judgment filings in only her name, and Lee and Bryant adopted them. For ease of reference, we refer to all three appellees collectively as "Lucinda," except when it is necessary to identify them separately. Lawrence H. Durham ("Lawrence"), the only other Durham sibling, is relevant to some of the issues before us, but he died during the course of the underlying litigation. Lawrence "Cody" Durham was later substituted as a party in his capacity as the personal representative of his father's estate, but Lawrence's estate is not a party to this appeal. Lastly, we refer to Marjorie H. Durham, the appellees' mother, as "Durham" throughout the opinion.

and as trustee of the Marjorie H. Durham Irrevocable Trust (the "Durham Trust" or "Trust"), seeking a final accounting of the Trust, which designated her and her three siblings as remainder beneficiaries.[2]

Callaway asserts that the trial court erred in finding as a matter of law that (1) he was required to distribute the trust corpus to the remainder beneficiaries immediately upon Durham's death; (2) he was required to disgorge trustee fees, attorney fees, and certain costs paid to him by the Trust after May 3, 2012; (3) he violated his duty of loyalty by making a pre-litigation settlement offer to Lucinda; (4) he lacked the authority to distribute trust assets to or for the benefit of Lawrence, without resolving Lucinda's pending motion for set-off and his motion for approval of his accounting; (5) he lacked the authority to lease trust property to a remainder beneficiary without first resolving the issues raised in the aforementioned motions; (6) he violated his duty to provide reports and accounts of the Trust without first addressing the issues presented by his motion for review and approval of accounting;

---

[2] This is the second time Lucinda and Callaway have been before this Court to resolve issues related to the Durham Trust. *See Callaway v. Willard*, 321 Ga. App. 349 (739 SE2d 533) (2013) ("*Callaway I*"). Specifically, in *Callaway I*, we addressed only the *in terrorem* clause in the Durham Trust, which is not at issue in this appeal. *See id.* at 349, 356 (2) (b), 358-59 (3) (a)-(b) (affirming the trial court's finding that Lucinda, Bryant, and Lee did not violate the Trust's *in terrorem* clause and remanding for further proceedings).

2

and (7) the Trust did not hold title to a property known as Dowdy Farm prior to May 12, 2017. Callaway also contends that the trial court erred in striking affidavits he submitted in response to Lucinda's motion for partial summary judgment. For the reasons set forth *infra*, we affirm.

Viewing the evidence in the light most favorable to Callaway (*i.e.*, the nonmovant),[3] the record shows that on April 13, 2000, Durham created an irrevocable trust, designating herself as the sole lifetime beneficiary and Callaway as the trustee. In doing so, Durham conveyed to Callaway and his successors property referred to as Trust Track A and Trust Track B, which were described in an attachment to the trust instrument and were collectively referred to as "the Trust Estate." Durham also indicated that additional properties may be added to the Trust Estate from time to time if acceptable to the trustee. And relevant to the instant dispute, the Trust provided that upon Durham's death, all of the remaining trust property "shall be distributed to [her] four children, with properties designated as Trust Tract A being conveyed to Lawrence H. Durham in fee simple, and the properties designated as Trust Tract B being conveyed to Bryant Durham, Lee Durham, and Lucinda D. Willard in fee simple." Tract A and Tract B were comprised of real property, and for purposes of

---

[3] *See, e.g.*, *Kelly v. Harris*, 329 Ga. App. 752, 752 (766 SE2d 146) (2014).

3

management and final distribution of the Trust Estate, the Trust required that the fair-market value of the properties in Tract A were equal to the fair-market value of the properties in Tract B. Additionally, the Trust provided that certain indebtedness must be paid before the two trust tracts were distributed to Durham's children (*i.e.*, the remainder beneficiaries). Durham passed away on May 3, 2009, and notwithstanding these trust provisions, Callaway did not distribute the trust property to the remainder beneficiaries. Indeed, there is nothing in the record or the parties' briefs to suggest that—at least as of the 2018 order that is the subject of this appeal—he ever made such distributions.[4]

On January 9, 2014, Lucinda filed a verified petition for a final accounting under OCGA § 53-12-243 against Callaway, individually, and in his capacity as trustee of the Durham Trust. Lucinda also sought attorney fees and costs of litigation against Callaway personally. Thereafter, the court issued an order compelling Callaway to submit a trust accounting. On May 1, 2015, Lucinda amended her petition, adding a claim for distribution of the Trust Estate and detailing specific instances in which Callaway allegedly engaged in improper or unauthorized conduct

---

[4] The remaining evidence necessary to resolve this appeal, viewed in the light most favorable to Callaway, is set forth *infra* in the relevant divisions.

as trustee. Discovery ensued, and on April 25, 2017, Lucinda filed a motion for partial summary judgment, seeking a judgment establishing Callaway's liability for his various actions or inactions that she alleged violated his fiduciary duties and provisions of the trust instrument. But throughout her supporting brief, Lucinda contended that the exact amount of "credits" owed by Callaway to the Trust for certain claims should be "set by the finder of fact." Ultimately, following a hearing, the trial court granted Lucinda's motion for partial summary judgment, and agreed with her that the exact amount Callaway owed to the Trust must be determined by the factfinder. This appeal follows.

1. Callaway first argues that the trial court erred in striking three affidavits that he submitted at the summary-judgment hearing. We disagree.

At the hearing on Lucinda's motion for partial summary judgment, Callaway sought to submit affidavits executed by himself, Jimmy Sands, and Randy Waters. Specifically, Callaway's affidavit detailed the history of the bank stock owned by the Trust.[5] Sands—who is a real estate broker, auctioneer, and general appraiser—averred

---

[5] Initially, Callaway submitted two affidavits that he executed. One was entitled "Affidavit of William E. Callaway, Jr." and the other was entitled "Affidavit Regarding the History of Bank Stock Marjorie H. Durham Irrevocable Trust." Although both affidavits were discussed at the hearing, Callaway later withdrew his personal affidavit, and as a result, only the bank-stock affidavit is at issue on appeal.

5

that, on a number of occasions, he assisted Callaway with various matters regarding the trust property. His affidavit primarily relates to appraisals of various trust properties and his assessment that the fair-market value of six of those properties had been reduced as a result of conservation easements. Waters—who is a registered forester—averred that he had been retained on a number of occasions by Durham and some of her family members to manage and periodically arrange for sales of their timber holdings. And his affidavit relates primarily to his relationships with Durham and Callaway, the process by which they decided to sell timber, and how those sales were conducted.

Lucinda moved to strike the affidavits, arguing that they contained hearsay and were not relevant to the issues before the trial court. A discussion then ensued between the court and parties, during which the court and Lucinda repeatedly expressed concerns that, while the affidavits might be relevant to the issues submitted to the fact finder in a later proceeding, they were not relevant to the limited issues before the court in Lucinda's motion for partial summary judgment. And even Callaway agreed several times that, if the issues raised by the affidavits would not be decided at the summary-judgment phase, excluding them at that time was appropriate. Indeed, at one point, Callaway indicated that if issues regarding whether his actions

6

as trustee were justified or prudent would not be addressed at the summary-judgment stage, "[he] [did] [not] think the affidavits properly relate[d]" to the proceedings. Ultimately, finding that the affidavits were not relevant to the instant proceedings, the trial court excluded them from consideration only with respect to Lucinda's motion for partial summary judgment. And while Callaway objected "just for the record[,]" he provided no basis for this objection, and he did not withdraw his earlier statements regarding whether the affidavits were relevant in the context of Lucinda's motion for partial summary judgment.

The determination of whether evidence is relevant, of course, "lies within the discretion of the trial court, whose decision will not be disturbed on appeal absent an abuse of discretion."[6] And although Georgia law favors the admission of relevant evidence, "evidence that does not bear directly or indirectly on the questions being tried should be excluded as irrelevant."[7]

Callaway now argues, generally, that the trial court erred in excluding the affidavits summarized above because its order granting partial summary judgment

---

[6] *Smith v. Saulsbury*, 286 Ga. App. 322, 325 (2) (649 SE2d 344) (2007).

[7] *Id.* (punctuation omitted); *see* OCGA § 24-4-402 ("Evidence which is not relevant shall not be admissible.").

7

"resolve[d] issues as a matter of law with respect to which the affidavits clearly and unequivocally create genuine issues of fact that must be resolved by a jury." He further contends that the trial court was required to determine which parts of the affidavits were admissible and could not strike them in their entirety without first making findings of fact and conclusions of law. But Callaway does not identify any specific portions of the trial court's ten-page order that decides an issue to which any of the affidavits were relevant. Likewise, Callaway does not specify which portions of which affidavit he believes are relevant to the issues ultimately decided by the court. Furthermore, in addition to Callaway's complete lack of specificity, we are further impeded in reviewing this claim of error by the voluminous record in this case, which includes 17 volumes comprised of several transcripts as well as a 2,751 page record. As we have previously explained, we will not "cull the record on behalf of a party, particularly in a case such as this where the record is voluminous."[8] Thus, because Callaway has not identified which portions of the affidavits he believes were

---

[8] *Rolleston v. Cherry*, 226 Ga. App. 750, 755 (3) (487 SE2d 354) (1997); *see Harris v. State*, 256 Ga. App. 120, 122 (2) (567 SE2d 394) (2002) ("We have repeatedly held that it is not the function of this court to cull the record on behalf of a party. This is particularly true in a case such as this where the transcript alone exceeds 1,500 pages." (footnote and punctuation omitted)).

erroneously excluded and the trial court findings to which they were relevant, he fails to provide us with any specific error to review.[9]

2. Next, Callaway asserts several claims of error related to the trial court's findings as to whether his actions or inactions in his capacity as trustee of the Durham Trust violated the terms of the Trust or his fiduciary duties. As explained *infra*, each of his claims of error in this regard lack merit.[10]

The cardinal rule in construing a trust instrument is to "discern the intent of the settlor and to effectuate that intent within the language used and within what the law

_____

[9] The only legal authority Callaway provides in support of his claim that a trial court cannot exclude an entire affidavit without first making findings as to whether any portion of affidavit is admissible is *Sullivan v. Fabe*, 198 Ga. App. 824 (403 SE2d 208) (1991), which is readily distinguishable. Unlike this case, *Sullivan* does not address whether an affidavit can be excluded in its entirety because the substance or subject matter of the affidavit is wholly irrelevant. Instead, *Sullivan* held that a trial court must consider whether any portion of an affidavit is in *technical compliance with a statute* before striking it in its entirety. *See id.* at 827 (2). Here, there has been no challenge to any of the affidavits' technical compliance with a statute.

[10] As to each claim of error discussed *infra*, the trial court made some of its own findings, but it also found that summary judgment was warranted for the reasons set forth in Lucinda's motion for partial summary judgment and supporting briefs. Thus, in reviewing the trial court's findings, we view the arguments Lucinda made below as incorporated into the court's order.

will permit."[11] And in the event of doubtful or ambiguous language, we adhere to the "rule of contra proferendum, construing the language against the maker of the document."[12] But in construing an express trust, such as the Durham Trust, we look first and foremost to "the language therein to effectuate the intent of the settlor[ ], [and] [w]e turn to parol evidence only if the trust instrument is ambiguous. . . ."[13] Finally, the existence or nonexistence of an ambiguity is "a question of law for the court."[14] With these guiding principles in mind, we turn now to Callaway's specific claims.

(a) *Distribution of the Trust Property.* Callaway argues that the trial court erred in finding that the terms of the Trust required him to distribute the trust corpus to the remainder beneficiaries immediately after Durham died in May 2009.

---

[11] *Smith v. Hallum*, 286 Ga. 834, 834 (691 SE2d 848) (2010) (punctuation omitted); *accord Strange v. Towns*, 330 Ga. App. 876, 877 (769 SE2d 604) (2015).

[12] *Perling v. Citizens & S. Nat. Bank*, 250 Ga. 674, 676 (300 SE2d 649) (1983).

[13] *Wells Fargo Bank, N.A. v. Cook*, 332 Ga. App. 834, 843 (2) (775 SE2d 199) (2015); *accord Ovrevik v. Ovrevik*, 242 Ga. App. 95, 97 (1) (527 SE2d 586) (2000).

[14] *Mitchell v. Cambridge Prop. Owners Ass'n, Inc.*, 276 Ga. App. 326, 327 (1) (623 SE2d 511) (2005); *accord Y. C. Dev. Inc. v. Norton*, 344 Ga. App. 69, 73 (1) (806 SE2d 662) (2017).

Although Callaway's characterization of his claim of error suggests otherwise, the trial court did *not* find that he was required to distribute trust property to Durham's children *immediately* after she died. Instead, the court found that Callaway was required to distribute it "within a reasonable period of time" after her death. The court then concluded that Callaway's continued failure to distribute any of the trust property to Lucinda during the *nine* years after the Trust terminated was unreasonable. And indeed, at a hearing on December 17, 2014, approximately five years after Durham died, Callaway admitted that he had not yet distributed the trust property to the remainder beneficiaries. Then, in a 2017 summary-judgment filing, Callaway conceded that Lucinda's claim that he *still* had not distributed any of the trust property to her was "essentially true."

In relevant part, Section (4) (f) of the Durham Trust provides:

*Upon the death of the Donor/Beneficiary* [*i.e.*, Durham], all of the property remaining in the hands of the Trustee *shall be distributed* to [her] four children, with properties designated as Trust Tract A being conveyed to Lawrence H. Durham in fee simple, and properties designated as Trust Tract B being conveyed to Bryant Durham, Lee Durham[,] and Lucinda D. Willard in fee simple. . . ."[15]

---

[15] (Emphasis supplied).

11

Suffice it to say, the plain language of Section (4) (f) of the Trust *required* Callaway to distribute the remaining trust property to Durham's four children *upon her death*, and it provided the manner in which he was to divide the property among them. Callaway does not dispute this requirement, but he contends that the Trust also required him to pay off all existing indebtedness of the Trust prior to such distribution. In making this argument Callaway relies on subsequent language in Section 4 (f) of the Trust, which provides:

> Each trust tract shall be subject to an equal portion of any indebtedness owed by and/or secured by the Trust Estate, and shall be subject to any indebtedness and/or liability of Donor or Donor's Estate, including costs of administration and estate tax liabilities, which said indebtedness and/or liability shall be paid, utilizing said two trust tracts equally, by my [t]rustee *prior to the final distribution* to [Donor's] children. The decision of [the] [t]rustee as to the means, method[,] and manner of said payment and distribution shall be final, binding, and absolute.[16]

Callaway argues that requiring him to distribute the trust assets immediately following Durham's death would render his ability to pay off the relevant indebtedness impossible. But again, the trial court imposed no such requirement. Instead, while the parties dispute whether Section 4 (f) of the Trust required Callaway

---

[16] (Emphasis supplied).

12

to pay off the Trust's indebtedness or only Durham's personal debts prior to distributing the property, the trial court found that Callaway was required to execute all of his duties under the Section within a reasonable amount of time. Thus, Callaway's argument based on the language of Section 4 (f) simply does not relate to the trial court's *actual* ruling.

Callaway further contends that, under Section 3 of the trust instrument, he was entitled to a "period of not less than 36 months to equalize the utilization of assets between the two tracts" before distributing the trust assets. Setting aside that this 36-month period has long since passed, Callaway's reliance on Section 3 to support his continued failure to distribute trust assets is misplaced. In relevant part, the Trust provides:

> It is hereby directed that my Trustee, *in the management of this Trust and the Trust Estate*, shall *utilize* equally the assets from Trust Tract A and Trust Tract B, to the extent that such utilization shall be consistent with both good forestry management practices and sound business management practices; provided however, that my Trustee shall have a period of not less than 36 months to equalize the utilization of assets between the two tracts; and provided however further, that my Trustee, in his sole discretion, shall be authorized and empowered to borrow

13

funds against either trust tract for the specific purposes of *maintaining* equal net values between the two trust tracts.[17] .

Unlike Section 4 (f), the foregoing section makes no mention of Callaway's duties *following* Durham's death, instead providing instructions for his *management* of the Trust and requiring him to *maintain* equal net values of both trust tracts. Because Callaway was required to distribute those assets upon Durham's death, Section 3 can only apply to his actions as trustee during the life of the Trust. Further, Section 3 does not set a time limit for compliance with its provisions, but instead, it provides for an unspecified time period of *not less* than 36-months for compliance. Such an open-ended time period, if it applied after Durham died, is inconsistent with Durham's mandate to distribute the trust property upon her death. Thus, Callaway's interpretation that Section 3 allowed him at least 36 months following Durham's death to distribute trust assets to her children is belied by the plain language of the Trust.[18]

As previously mentioned, Callaway does not expressly object to the trial court's finding that he was required to comply with Section 4 (f) within a reasonable

---

[17] (Emphasis supplied).

[18] *See supra* notes 11-14 & accompanying text.

14

amount of time following Durham's death. But he argues that the issue of what constitutes a reasonable amount of time must be resolved by a jury. And he is correct that, "[g]enerally, the question of what is an unreasonable period of time is one for the jury."[19] Callaway ignores, however, that Georgia courts routinely decide that lengthy delays in performing a legal or contractual obligation much shorter than the one at issue here constitute an unreasonable delay as a matter of law.[20] Here, especially given the unambiguous language of the Trust instrument that Callaway must distribute the trust assets *upon Durham's death*, we conclude that Callaway's failure to do so for *at least* nine years is unreasonable as a matter of law. Thus, the

---

[19] *Klingbeil v. Renbaum*, 146 Ga. App. 591, 593 (3) ( 246 SE2d 698) (1978).

[20] *See, e.g.*, *Protective Ins. Co. v. Johnson*, 256 Ga. 713, 714 (1) (352 SE2d 760) (1987) (holding that a 43-month delay in giving insurer notice of a claim, when such notice was required to be given "promptly," and a 17-month delay in seeking certain benefits were both unreasonable as a matter of law); *Orion Capital Partners, L.P. v. Westinghouse Elec. Corp.*, 223 Ga. App. 539, 543 (2) (b) (478 SE2d 382) (1996) (holding that a seven-month delay in attempting to rescind a contract, which was an option under its terms, was "too late as a matter of law to constitute an effective rescission or reasonable offer to rescind the agreement"); *Lloyd v. Hodge*, 191 Ga. App. 355, 355-56 (381 SE2d 540) (1989) (holding that a five-and-a-half-month delay in paying certain court costs was unreasonable and inexcusable as a matter of law); *Ferguson v. Bank of Dawson*, 57 Ga. App. 639, 639 (2) (196 SE 195) (1938) (holding that, when a contract of sale provides no specific time for performance, a reasonable time is to be allowed, and a six-and-a-half-month delay in executing the sale after the contract was executed was an unreasonable delay as a matter of law).

15

trial court did not err in granting summary judgment to Lucinda as to her claim for the distribution of trust assets.[21]

(b) *Trustee and Attorney Fees.* Callaway next argues that the trial court erred in finding that he was required, as a matter of law, to disgorge trustee fees, attorney fees, and costs paid to him from trust funds after May 3, 2012.[22]

---

[21] *See Munford v. Peeples*, 152 Ga. 31, 45-46 (2) (108 SE 454) (1921) (holding that a provision in a will should not be interpreted such that "a trustee could arbitrarily prolong the trust in his own interest as against the interest of the cestui que trust. The rule has been stated that . . . [when] the creator of a trust makes its duration discretionary with the trustee, still such discretion is not arbitrary, but must be exercised reasonably and in the interest of the cestui que trust" (punctuation omitted)); *Ovrevik*, 242 Ga. App. at 98-99 (3) (holding that the sole purpose of a trust was fulfilled when both settlors had died and the trial court properly terminated the trust and ordered distribution of the trust property in accordance with the terms of the trust); *see also supra* note 20.

[22] Regarding this claim of error, Callaway adopts in its entirety the portion of his brief addressing the claim of error at issue in Division 2 (a) *supra*. But given that we have already considered and rejected those arguments, we will not address them again. Additionally, Callaway summarily contends that payments he made with trust funds to third parties for services were necessary to retain services. But this conclusory allegation, which was unsupported by record citations, legal authority, or meaningful argument, fails to allege a specific trial court error with respect to any particular payment to an identified third party for this Court to review. *See supra* note 8 & accompanying text; *Alston & Bird, LLP v. Mellon Ventures II, L.P.*, 307 Ga. App. 640, 648 (6) (b) (706 SE2d 652) (2010) ("Our appellate courts are courts for the correction of errors of law committed in the trial court.").

In its order, the trial court found that, after the Trust terminated upon Durham's death, Callaway was not authorized to continue paying himself trustee fees, attorney fees, and costs from trust assets. The court noted that, while issues of fact remained as to the exact *amount* "of credits due from [Callaway][,] individually, to the Trust as a result of [his various] unauthorized actions, [the] portion of the credits due are ascertainable as a matter of law with respect to [the aforementioned] fees and costs." Additionally, the court found, as we have, that the plain and unambiguous language of the trust instrument did not provide Callaway a period of 36 months to finish administering the Trust *after* it terminated. The court further found that, notwithstanding Callaway's contention that he had a 36-month "wind down" period, he continued to pay himself fees and costs from trust assets even after that time period expired on May 3, 2012. But ultimately, the court excluded that 36-month period and found Callaway owed the Trust the trustee fees, attorney fees, and other costs that he received *after* May 3, 2012.[23]

---

[23] The trial court found that Callaway must disgorge and pay in the principal amount of $105,000 with an additional $35,765.72 in accrued interest as of April 24, 2018, for a total disgorgement of $140,765.72 with $22.29 due per diem after April 24, 2018. While Callaway argues that he was entitled to these fees under the terms of the Trust, he does not dispute the trial court's calculation of the fees and costs.

17

On appeal, Callaway correctly notes that Section 12 of the Trust provides for the amount of trustee fees and expenses that he must be paid for his services as trustee and when such payments were to be made. He then argues that because he was entitled to a period of at least 36 months to "equalize the utilization of assets between the two [trust tracts], it defies logic" for the trial court to conclude that Durham did not intend for him to be paid for his trustee and attorney services after her death. According to Callaway, no reasonable person, and especially not an attorney, would remain signatory to millions of dollars of debt without being paid for his services, and thus, the only logical interpretation of the Trust instrument is that he was entitled to be paid such fees.

As to Callaway's reliance on the 36-month time period provided for in Section 3 of the Trust, we have already held in Division 2 (a) *supra* that it applies to Callaway's *management* of the Trust *during* the life of the Trust. And contrary to his repeated assertions otherwise, Section 4 (f), not Section 3, pertains to the duties he was required to perform after Durham's death. It appears that, in an abundance of caution, the trial court ordered Callaway to pay only the fees and costs he received after May 3, 2012, rather than after Durham's May 2009 death. In making that determination, the trial court properly based its decision primarily on the language of

18

the trust instrument, rather than on what a "reasonable attorney" would have agreed to be paid.[24]

Callaway also alleges that, between May 9, 2009, and December 17, 2014, the timber sales and negotiations he engaged in on behalf of the Trust generated more than two million dollars of Trust income, which allowed him to make significant headway toward paying off the Trust's indebtedness. But again, following Durham's death, Callaway was authorized only to pay off the relevant indebtedness and distribute the trust property within *a reasonable period of time*. Callaway provides no legal authority or substantive arguments to support his apparent belief that the plain language of the Trust authorized him to continue engaging in business transactions for over five years after Durham died, whether his actions benefitted the Trust or not. In sum, Callaway has not identified a legal or factual error in the trial court's finding that he was not authorized to continue collecting fees and costs of the Trust three years after Durham's death.[25]

_____

[24] *See supra* notes 11-14 & accompanying text.

[25] Callaway provides only two citations to legal authority in support of his contention that he is not liable for fees and costs paid to him from trust assets after May 3, 2012: OCGA § 53-12-260 and *Reliance Tr. Co. v. Candler*, 294 Ga. 15 (751 SE2d 47) (2013). And he summarily contends that, under OCGA § 53-12-260 and *Candler*, he is not liable for any actions he took as trustee unless a jury finds he acted

(c) *Pre-litigation Settlement Proposal*. Callaway also argues that the trial court erred in finding that he violated his duty of loyalty by making a pre-litigation settlement proposal to Lucinda, Bryant, and Lee for distribution of their respective shares of trust property in exchange for a full and complete release of him from liability as trustee.

On January 8, 2014, *over four-and-half years* after Durham's death, Callaway sent a letter to Lucinda's counsel, updating him on various matters related to the status of the Trust, including its assets and indebtedness. Callaway then proposed that he convey to Lucinda, Lee, and Bryant their respective shares of trust assets subject to debts owed by the Trust. And in conclusion, Callaway stated that "[t]he conveyances and final distribution of the Trust [are] subject to the simultaneous[ ] execution of a full and complete release of myself as Trustee."

---

in bad faith. But he provides no further discussion as to the application of those authorities to the facts of *this* case or any arguments in support of this bare assertion. *See Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014) ("[M]ere conclusory statements are not the type of meaningful argument contemplated by [this Court's] rules." (punctuation omitted)). Moreover, we fail to see how the requirement that a trustee generally perform his duties in good faith bears any relation to the instant circumstances, when the actions taken by Callaway were completely *unauthorized*, regardless of whether he acted in good or bad faith.

20

At a hearing on December 17, 2014, Callaway was asked about the January 2014 letter, and the following exchange occurred:

Q: So it's your intent to distribute Trust Tract B to Lucinda, Bryant[,] and Lee?

A: I made an offer initially when all this came up to split the debt and convey out the property. And I never received a response. And you know . . . since the beneficiaries have never been able to agree to anything, if the property is conveyed without the debt being paid the bank is going to end up foreclosing it because nobody will agree to how it's going to be divided and who is going to pay what. And that isn't what [Durham] wanted.

Q: And the offer that you're talking about to distribute the property, that was conditioned on a simultaneous full and complete release of yourself, right?

A: Yeah. I don't want to distribute it out and then—you know, be in litigation forever.

Q: You're not going to give it to the beneficiaries unless you're released, right?

A. Why would I?

Lucinda argued below that, under OCGA § 53-12-246 (a), a trustee cannot condition performance of a mandatory fiduciary duty on a release from liability, and the trial court agreed. Indeed, OCGA § 53-12-246 (a) provides: "A trustee shall administer the trust *solely* in the interests of the beneficiaries."[26] And here, several years after Durham's death, Callaway expressly conditioned the execution of his mandatory duty to distribute trust assets to the remainder beneficiaries upon Durham's death on a complete release of any legal liability related to his role as trustee. Needless to say, setting such a precondition to distribution of Trust property violates the plain terms of Section 4 (f) of the Trust, detailed *supra*, and such a release would solely benefit Callaway to the potential detriment of the remainder beneficiaries. The only precondition to distribution of the trust assets was the payment of certain debts, and Callaway fails to identify *any language* in the trust document evidencing Durham's intent to absolve him of all liability for any misconduct that he might engage in as trustee.

Nevertheless, Callaway appears to suggest that the 2014 letter was misinterpreted by the trial court, and he discusses the contents of the letter as well as the circumstances surrounding when it was written. Callaway claims that his proposal

[26] (Emphasis supplied).

22

was "clearly intended as a speedier alternative to his continued service as [t]rustee[,] which required him to pay off all [t]rust indebtedness prior to distribution of [t]rust property securing the indebtedness." But once again, without providing any legal authority regarding fiduciary duties or applying such authority to the specific facts of this case, Callaway simply presents his version of the facts, most of which are not supported by citations to the record. Then, in conclusion, he summarily contends that the trial court erred by finding that the letter constituted a violation of his duties under OCGA § 53-12-246 (a) because there was no evidence to support it. But again, an appellant must support enumerations of error with argument and citations of authority, and "mere conclusory statements are not the type of meaningful argument contemplated by our rules."[27]

Regardless, Callaway is mistaken that there was no evidence to support the trial court's finding that the settlement offer violated his fiduciary duties under OCGA § 53-12-246 (a). Indeed, the January 2014 letter clearly and unambiguously stated that Callaway would not distribute Trust Tract B, as *mandated* by Section (4) (f) of the Trust, unless Lucinda, Lee, and Bryant released him of any Trust-related liability, and

---

[27] *Farmer v. Dep't of Corr.*, 346 Ga. App. 387, 394 (2) (816 SE2d 376) (2018) (punctuation omitted).

23

he later testified that he did so to protect *himself* from being "in litigation forever."

As our Supreme Court has explained,

> [a] testamentary trustee must act, not only for the benefit of the trust estate, but also in such a way as not to gain any advantage, directly or indirectly, except such as the law specifically gives him; and he owes an undivided duty to the beneficiary, and must not place himself in a position where his personal interest will conflict with the interest of the beneficiary.[28]

Here, Callaway admittedly made his offer to execute his mandatory duty to distribute trust property contingent on immunity from liability for his actions as trustee. Doing so was for his sole benefit, and possibly to the detriment of the beneficiaries. Thus, the trial court did not err in finding that his conduct violated his fiduciary duties under OCGA § 53-12-246.[29]

---

[28] *Hanson v. First State Bank & Tr. Co.*, 259 Ga. 710, 711 (4) (385 SE2d 266) (1989) (punctuation omitted); *see Ringer v. Lockhart*, 240 Ga. 82, 85 (239 SE2d 349) (1977) ("The broad rule of equity . . . is that it is the duty of a trustee not to . . . do any act inconsistent with the interest of the beneficiary . . . . Whenever he has placed himself in a position that his personal interest has or may come in conflict with his duties as trustee, a court of equity never hesitates to remove him. In such circumstances the court does not stop to inquire whether the transactions complained of were fair or unfair; the inquiry stops when such relation is disclosed." (punctuation and citation omitted)).

[29] *See Jonas v. Jonas*, 280 Ga. App. 155, 161 (633 SE2d 544) (2006) ("If one of the interests involved is that of the trustee personally, selfishness is apt to lead her

3. In his next three claims of error, Callaway contends that the trial court erred in making certain findings without first ruling on Lucinda's pending motion for set-off or his pending motion for review and approval of accounting. Specifically, Callaway argues that the trial court erred in finding, before ruling on the set-off and accounting motions, that he lacked the authority to distribute trust assets to or for the benefit of Lawrence or his estate and to lease trust property to Lawrence. Callaway also argues that the trial court erred in finding that he violated his duty to provide reports and accounts without having ruled on his accounting motion. But these contentions are likewise without merit.

As an initial matter, Callaway never argued to the trial court that ruling on Lucinda's motion for partial summary judgment would be improper unless the court first ruled on his accounting motion. In fact, at the summary-judgment hearing,

to give herself an advantage[,] . . . it is not necessary for the beneficiaries to show that the trustee acted in bad faith, gained an advantage, or that they were harmed. The trustee must avoid being placed in such a position, and if she cannot avoid it, she may resign, may fully inform the beneficiaries of the conflict, or may request the court to appoint a guardian ad litem to protect the unprotected interests." (punctuation omitted); *Bloodworth v. Bloodworth*, 260 Ga. App. 466, 471 (1) (579 SE2d 858) (2003) ("An administrator or executor is a trustee invested with a solemn trust to manage the estate under his control to the best advantage of those interested in it . . . . Nothing can be tolerated which comes into conflict or competition with the interests and welfare of those interested in the estate." (punctuation omitted)).

25

Lucinda's counsel indicated that he had "just received" an update to the accounting motion, but he had not had a chance to review it, and Callaway made no objection to continuing with the hearing despite that motion being unresolved. Thus, because this claim was not raised or ruled upon in the trial court, it presents no error to review on appeal.[30]

Callaway did assert, however, both at the summary-judgment hearing and in his summary-judgment response brief, that a ruling on Lucinda's motion for partial summary judgment would be premature unless the court first ruled on her pending motion for set-off. And he now argues that the trial court erred in finding that he lacked authority to distribute or lease trust assets to Lawrence without first ruling on Lucinda's motion for set-off.

As to leasing trust property to Lawrence, Callaway mischaracterizes the trial court's ruling. Instead of finding that Callaway was unauthorized to lease property to Lawrence, the trial court found that Callaway lacked the authority to *permit*

---

[30] *See OVIP, Inc. v. Blockbuster Textiles, LLC*, 289 Ga. App. 276, 278 (1) (656 SE2d 907) (2008) ("[I]ssues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken. One may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on below." (punctuation omitted)).

*Lawrence*, his estate, or any other third party to lease trust property and retain the proceeds rather than remitting them to the Trust. Regardless, based on Callaway's preferential treatment of Lawrence, Lucinda filed a motion to set-off any distributions to his estate by debts it owed to the Trust. Specifically, Lucinda contended that Lawrence's estate owed the trust $2,000,000, and that this debt must be paid to the Trust before distribution of the Trust assets generally or to Lawrence's estate. Lucinda further argued that, to the extent that the set-off from Lawrence's estate does not make the Trust whole for the distributions to and in favor of Lawrence, Callaway must pay the balance. As to this issue, the trial court found that, under the plain language of the Trust, Callaway was unauthorized to engage in such preferential treatment of Lawrence, but that the finder of fact must determine the *amount* of credits due from Callaway personally for this improper conduct. The trial court did not rule on whether that amount would be set-off by payments made from Lawrence's estate.

In his appellate brief, Callaway details his justifications for giving preferential treatment to Lawrence, asserting that any action Lucinda initiates to recover damages for this conduct depends on the outcome of her set-off motion. But Callaway is mistaken that the trial court must first rule on Lucinda's set-off motion before

deciding whether Callaway's preferential treatment of Lawrence violated the plain language of the Trust. As he acknowledges, the amount of damages awarded as to this claim will be decided by a jury. The court's ruling on the set-off motion, then, will relate solely to the jury's calculation of damages and how much of those damages should be set-off by Lawrence's estate. This Court regularly approves of bifurcated proceedings in which liability is decided as a matter of law or by default before damages are resolved at trial.[31] Thus, the trial court did not err in deciding Callaway's liability with respect to his preferential treatment without first ruling on Lucinda's set-off motion.

4. Finally, Callaway argues that the trial court erred in finding that the Trust did not hold title to real property known as Dowdy Farm until a conveyance of that

---

[31] *See Ferdinand v. City of E. Point*, 288 Ga. App. 152, 153-54, 160 (653 SE2d 529) (2007) (affirming the trial court's order granting partial summary judgment as to a breach-of-contract claim, but reversing the trial court's award of damages and remanding for further proceedings); *Performance Mech. Co. v. Heat Transfer Control, Inc*., 247 Ga. App. 436, 436-37 (543 SE2d 808) (2000) (affirming judgment when the trial court granted partial summary judgment to the plaintiff, and the remaining issues were submitted to a jury, which awarded damages and found that the defendant was entitled to set-off of a portion of those damages); *K-Mart Corp. v. Hackett*, 237 Ga. App. 127, 127-28, 134 (5) (514 SE2d 884) (1999) (affirming the judgment in a tort action, when liability was established by default judgment and a jury trial was held solely on the issue of damages);*Whitley v. Gwinnett Cty*., 221 Ga. App. 18, 19-20 (2) (470 SE2d 724) (1996) (affirming the trial court's decision to bifurcate issues of liability and damages in a wrongful death action).

property on May 12, 2017, because an earlier deed executed in 2007 was void for failing to comply with OCGA § 53-12-25 (a).

On January 26, 2007, Lawrence conveyed Dowdy Farm to the "Marjorie Durham Irrevocable Trust." Thereafter, the Trust paid expenses as owner of Dowdy Farm, including taxes and loan interest, after borrowing money for the purchase. Years later, on May 12, 2017, Cody, as administrator of Lawrence's estate, revised the deed to convey Dowdy Farm to "William E. Callaway, Jr., Trustee of the Marjorie H. Durham Irrevocable Trust[,]" rather than the Trust itself. And in her motion for partial summary judgment, Lucinda sought a ruling that, as a matter of law, the Trust did not own Dowdy Farm until the May 12, 2017 conveyance because under OCGA § 53-12-25 (a) and other controlling authority, the 2007 conveyance did not transfer legal title to Callaway, as trustee. The trial court agreed, finding that the farm did not become trust property until the 2017 conveyance.

OCGA § 53-12-25 (a) provides that "[t]ransfer of property in trust shall require a transfer of legal title to the trustee." And presumably, Cody corrected the deed conveying Dowdy Farm in 2017 to convey it to Callaway, rather than the Trust, to comply with this statute. In considering Callaway's argument that the 2007 deed was valid, we must first consider whether OCGA § 53-12-25 (a) applied to the 2007

29

conveyance because "[that] provision did not go into effect until July 1, 2010."[32] The

Revised Trust Code of 2010 ("Revised Code") applies to any trust regardless of the

date it was created, "[e]xcept to the extent it would impair vested rights and except

as otherwise provided by law."[33] In *Rose v. Waldrip*,[34] we held that OCGA § 53-12-25

(a) did not apply retroactively to a conveyance made before its effective date because

that statute requires a formal transfer of trust property, and the prior law did not.[35] We

further held that because the remainder beneficiary's rights to trust assets had already

vested in 2008 when the lifetime beneficiary died before the Revised Code was

enacted in 2010, OCGA § 53-12-25 (a) did not apply retroactively to the conveyance

at issue.[36] Ultimately, we held that "before enactment of the Revised Code, a settlor

---

[32] *Rose v. Waldrip*, 316 Ga. App. 812, 816 (1) (b) (i) (730 SE2d 529) (2012), *citing* Ga. L. 2010, p. 506, § 1.

[33] OCGA § 53-12-1 (b); *see* Ga. Const. art. I, § 1, ¶ X (1983) ("No bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed.").

[34] 316 Ga. App. 812.

[35] *See Id.* at 816 (1) (b) (i).

[36] *See id.* at 817 (1) (b) (i); *see Woodruff v. Tr. Co. of Ga.*, 233 Ga. 135, 141 (2) (210 SE2d 321) (1974) ("An estate is vested when there is an immediate right of enjoyment or a present fixed right of future enjoyment.").

*who declared a trust naming himself as trustee* was *not* required to separately and formally transfer the designated property into the trust."[37] Subsequently, in *Gibson v. Gibson*,[38] the Supreme Court of Georgia clarified that our holding in *Rose* applies only to self-settled trust in which the settlor is also the trustee.[39] Thus, because the Durham Trust is not a self-settled trust, our holding in *Rose* that a separate and formal transfer of the property into the trust was not required is inapplicable in this case.

Nevertheless, as previously mentioned, the Georgia Constitution forbids the retroactive application of laws that injure vested rights.[40] Here, like the beneficiaries in *Rose* and *Gibson*, Lucinda's rights in trust assets vested prior to the enactment of the Revised Code in 2010 because, under the terms of the Trust, her rights took effect when Durham died in May 2009.[41] Under such circumstances, applying OCGA § 53-

---

[37] *Rose*, 316 Ga. App. at 819 (1) (b) (i) (emphasis supplied).

[38] 301 Ga. 622 (801 SE2d 40) (2017).

[39] *See id.* at 633-34 (3) (c).

[40] *See supra* at note 36 & accompanying text.

[41] *See Gibson* at 633-34 (3) (c). (holding that the trust instrument allowed the beneficiaries to begin making withdrawals immediately after the transfer of property, which meant application of the Revised Code could impair the beneficiary's rights, and citing *Rose*'s holding that a remainder beneficiary's rights in a trust had already vested before the Revised Code was enacted in 2010 because, under the trust's terms, her rights to trust assets took effect upon settlor's death in 2008).

12-25 (a) retroactively could impermissibly affect Lucinda's vested rights.[42] Thus, we must determine whether, at the time of the 2007 transfer, "the law required that the assets be formally transferred to the trustee."[43] And applying the analysis in *Gibson*, which is analogous to this case, we conclude that it did.[44] Indeed, the Trust Code in 2007 defined a "trustee" as "the person holding legal title to the property in trust."[45] This statutory definition also provides that "the trustee must hold legal title to the assets in question for them to be considered in trust."[46] Thus, regardless of the requirements in the Revised Code, the applicable law in 2007 required that legal title to Dowdy Farm be conveyed to Callaway, as trustee of the Durham Trust, for it to become trust property. Under these circumstances, the trial court correctly concluded

---

[42] *See id.*(holding that, because the trust instrument here allowed the beneficiary to begin making withdrawals immediately [after the pre-2010 conveyance], application of the Revised Code to invalidate a purported transfer to the trust could impair her vested rights).

[43] *Id.* at 634 (3) (c).

[44] *See id.* (concluding that, at least in the case of a settlor who did not name himself as a trustee, the law at the time of the May 2010 conveyance, which occurred before the enactment of the Revised Code later that year, required that property be formally transferred to the trustee to become a trust asset).

[45] Former OCGA § 53-12-2 (11) (2007). We note that this statute was carried over with a slight revision to the new Trust Code at OCGA § 53-12-2 (16).

[46] *Gibson*, 301 Ga. at 634 ( 3) (c).

32

that the farm did not become trust property until the 2017 deed satisfied that requirement.[47]

Finally, we acknowledge that the trial court improperly found that OCGA § 53-12-25 (a) applied retroactively to the 2007 conveyance of Dowdy Farm. But a grant of summary judgment must be affirmed if "it is right for any reason, whether stated or unstated in the trial court's order, so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond."[48] And here, although Lucinda initially argued in her motion for partial summary judgment only that the 2007 deed was void because OCGA § 53-12-25 (a) applied, she attached the *Gibson*

---

[47] After discussing the application of *Rose* and *Gibson* to this case, Callaway summarily states that "[i]n any event, having exercised open notorious, exclusive[,] and continuous good faith possession of the Dowdy Farm under color of title by the Warranty Deed for a period of seven years, by January of 2014, the Trust had acquired title thereto by prescription under [OCGA] § 44-5-164." But as with several of his prior contentions, Callaway has abandoned any argument based on OCGA § 44-5-164 because he fails to cite to any evidence in the voluminous record, provide any factual details to support this allegation, or make any meaningful arguments to support it. Thus, we decline to address the application of OCGA § 44-5-164 to the facts of this case. *See supra* note 8 & accompanying text; *Sirdah v. N. Springs Assocs., LLLP*, 304 Ga. App. 348, 352 (2) (696 SE2d 391) (2010) ("Pursuant to Court of Appeals Rule 25 (a) (3), an appellant must support enumerations of error with argument and citations of authority, and mere conclusory statements are not the type of meaningful argument contemplated by Rule 25 (a) (3)." (punctuation omitted)).

[48] *Georgia-Pac., LLC v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013) (emphasis omitted).

33

opinion, in its entirety, to her motion, and importantly, both parties addressed the issues raised in *Gibson* in subsequent responsive filings. Under such circumstances, we find that the issues addressed in *Gibson*, and relied on herein, were sufficiently raised before the trial court. Thus, we may affirm the trial court's findings because it was correct under *Gibson*, even though its basis for this ruling was in error.[49]

For all these reasons, we affirm the trial court's grant of partial summary judgment to Lucinda.

*Judgment affirmed. Gobeil and Hodges, JJ., concur.*

---

[49] *See supra* note 48 & accompanying text.