**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely**
**filed.**
      **https://www.gaappeals.us/rules**

**February 6, 2026**

# In the Court of Appeals of Georgia

A25A2143. GILES v. GREENHOUSE APARTMENTS, LLC et al.

DILLARD, Presiding Judge.

James Giles appeals the trial court's grant of summary judgment to Greenhouse Apartments, LLC and GREP Southeast, LLC[1] in his premises-liability action against them for a violent attack on him by unknown perpetrators. More precisely, Giles argues the court erred in granting summary judgment to Greenhouse because (1) Greenhouse owed him a duty of care and the attack was reasonably foreseeable; (2) it improperly resolved factual disputes in favor of Greenhouse; (3) Greenhouse's breaches of its duty of care proximately caused the injuries he sustained in the attack; (4) it found his claims were barred by the equal-or-superior-knowledge doctrine; (5)

---

[1] For the sake of clarity, we refer to Greenhouse Apartments, LLC and GREP Southeast, LLC collectively as "Greenhouse."

he did not assume the risk of harm by remaining in his apartment after being attacked on Greenhouse's property; and (6) it denied his claims for attorney fees and punitive damages. For the following reasons, we affirm.[2]

Viewing the evidence in the light most favorable to Giles (*i.e.*, the nonmoving party),[3] the record shows that in 2020, he was a resident at Greenhouse Apartments, and GREP Southeast was the "property management company overseeing and operating" the complex. Some time in February or March 2020, Giles began working as a service technician for Greenhouse. In that position, Arelene Colon-Jiminez—the apartment manager—was Giles's "immediate supervisor," and Eddie Garcia-Suarrez was his "maintenance supervisor."

On June 2, 2020, while at work, Giles was attacked by someone he thought was an African American male. The incident occurred when Giles's back was turned, and the assailant said, "Fuck you, white boy," before striking him on the side of his head. The blow caused Giles to lose consciousness and "black[ ] out for a few minutes."

---

[2] Oral argument was held on October 7, 2025, and is archived on the Court of Appeals of the State of Georgia's website. *See* Court of Appeals of the State of Georgia, Oral Argument, Case No. A25A2143. (Oct. 7, 2025), *available at* https://vimeo.com/1127168448.

[3] See, e.g., *Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 696 (730 SE2d 164) (2012).

When Giles came to, he went to the complex's leasing office—despite his weakened condition—and reported the attack. Soon after, emergency services arrived and took Giles to the hospital. According to Giles, he was disoriented after the attack, bleeding from the side of his right eyebrow, experiencing a "massive headache," and his ears were ringing. Law enforcement responded to the scene and wrote a report detailing the attack. But ultimately, because of a "lack of evidence and no independent witnesses," no arrest was made.

Around 9:00 p.m. on June 18, 2020, Giles was at home and heard a knock on the door. He peered through the peephole, but saw no one. A few minutes later, Giles opened the door and found a note that said, "Now We No Were U Live White Boi Fuck U BD BLM." After that, Giles called the police and told them he was alarmed by the note and afraid to leave his apartment. And according to Giles, he repeatedly asked Greenhouse's management to move him to a different complex; but he was told they would "get back to [him]." A few days later, Colon-Jiminez contacted Giles, and he told her that he was "really scared" because "somebody knew exactly where [he] lived." Colon-Jiminez assured Giles that management would "look into it." Ultimately, Colon-Jiminez offered (on behalf of Greenhouse) to pay for him to temporarily stay in a hotel "down in Atlanta." And while Giles could not recall which

hotel was offered, he was uneasy with accepting it because "there were riots and fires and all kinds of chaos going on in the city."[4] So, because Giles refused to stay in a hotel, Greenhouse installed a motion-activated doorbell camera on the front door of his apartment.

Giles also testified about an incident that occurred later in the summer of 2020. On that day, he drove into the parking lot of the complex, exited the vehicle, and walked up the stairs to his apartment. Once he reached the top, he noticed two to four African American males pointing at him from below.[5] This menacing behavior made Giles nervous and fearful, so he notified a police detective—as well as Greenhouse staff and management—of what happened. According to Giles, following this incident, he was in "fear for [his] life" and "pretty much a hermit at that point."

As to the assault at issue, on September 3, 2020, at around 9:30 or 10:00 p.m., Giles returned to his apartment after shopping at a pharmacy and backed into a

---

[4] Giles lived at a Greenhouse property in Kennesaw, Georgia, and the hotel was in Atlanta. Giles was apparently concerned with the "Black Lives Matter" protests that he believed were taking place in Atlanta in June and July of 2020.

[5] It appears this incident may have occurred on August 7, 2020, but Giles testified below that he did not remember exactly when it happened. In any event, it is undisputed that it occurred between when he received the threatening note on June 18, 2020, and when he was attacked on September 3, 2020.

4

parking spot.[6] When he did so, he observed an African American man standing below his apartment. The man looked at Giles and said, "you fucked up, you should have left when your bitch-ass girlfriend moved out . . . [Y]ou're going to die tonight, motherfucker." Giles had no idea who the person was or if he was involved in the other threatening encounters detailed above. The person then began walking toward Giles and "put his arm up like he was going to hit [Giles]." Giles was able to hit the attacker before realizing there were two other people behind him. Giles then felt "somebody" grab him, place him in a chokehold, and drag him backward. At that point, the three men "proceeded to beat the living daylights out of [Giles] while telling [him] they're going to kill [him]." Eventually, Giles heard a car honking and the assailants say "let's bounce, let's roll." They left Giles "just laying on the ground."

Once the attack was over, Giles called 911 to report what happened because he was bleeding from "different places." Police officers responded to the scene, and their report noted that Giles was bleeding from his head, hand, and leg. A supplemental police report added that Giles had cuts on his head, left hand, and left calf. After being questioned by police, Giles was taken to the hospital for treatment. In addition to the police report, Greenhouse's regional manager completed a "General Liability Incident

---

[6] As emphasized in the trial court's order, Giles's claims "only pertain to the September[ ] incident."

Report," documenting the attack.

Later on, Giles filed a premises-liability action against Greenhouse, alleging that its negligence was the proximate cause of the injuries he sustained in the September 3, 2020 attack.[7] Greenhouse answered the complaint, denying many of its allegations and asserting affirmative defenses. Following discovery, Greenhouse moved for summary judgment, which Giles opposed but the trial court granted after a hearing. This appeal follows.

Summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[8] A *de novo* standard of review "applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[9] And at the summary-judgment stage, "[w]e do not resolve disputed facts, reconcile the issues, weigh the evidence,

---

[7] Giles filed an amended complaint shortly after filing the initial one, but it appears to just provide more factual details rather than any additional claims—except for a summary statement that Greenhouse was negligent per se. Giles's negligence per se claim is not at issue on appeal.

[8] OCGA § 9-11-56 (c). Accord *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

[9] *Martin*, 316 Ga. App. at 697 (quotation marks omitted).

or determine its credibility, as those matters must be submitted to a jury for resolution."[10] With these guiding principles in mind, we will address Giles's specific claims of error.

1. Giles first argues that Greenhouse owed him a duty of ordinary care to protect him from harm because the September 3, 2020 attack was reasonably foreseeable; but the trial court did not address this issue. Even so, Greenhouse concedes that, as his landlord, it owed him such a duty. We agree.

Generally, in order to recover on a premises-liability claim arising from third-party criminal conduct, a plaintiff must present evidence of "a duty, a breach of that duty, causation, and damages."[11] And as to the duty element, a proprietor owes its invitees a "duty to exercise ordinary care in keeping the premises and approaches safe."[12] That said, the landowner is not "an insurer of an invitee's safety [and], [a]n

---

[10] *Tookes v. Murray*, 297 Ga. App. 765, 766 (678 SE2d 209) (2009).

[11] *Pappas Rest., Inc. v. Welch*, 371 Ga. App. 614, 616 (901 SE2d 751) (2024) (punctuation omitted). See *Stadterman v. Southwood Realty Co.*, 361 Ga. App. 613, 615 (865 SE2d 231) (2021) (explaining that "[t]he essential elements of a negligence claim are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages" (quotation marks omitted)).

[12] *Pappas Rest.*, 371 Ga. App. at 616 (punctuation omitted). See OCGA 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages

intervening criminal act by a third party generally insulates a landowner from liability unless such criminal act was reasonably foreseeable."[13] As to premises liability, then, a tenant is an invitee and so, "landlords do have a duty to exercise ordinary care to prevent foreseeable third-party criminal attacks upon tenants."[14]

Turning to this case, the trial court did not expressly rule on whether Greenhouse owed Giles a duty of care to keep the apartment complex safe. And we have held that "[i]ssues which have not been ruled on by the trial court may not be raised on appeal."[15] That said, by addressing some of the other elements of Giles's

to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.").

[13] *Pappas Rest.*, 371 Ga. App. at 616 (punctuation omitted).

[14] *First Communities Mgmt., Inc. v. Byrd*, 373 Ga. App. 361, 364 (908 SE2d 376) (2024). See *Brookview Holdings v. Suarez*, 285 Ga. App. 90, 97 (645 SE2d 559) (2007) ("The general rule is that a landlord is not an ensurer of his tenant's safety; however, landlords do have a duty to exercise ordinary care to prevent foreseeable third-party criminal attacks upon tenants.").

[15] *Ga. Dep't of Nat. Res. v. Coweta Cnty.*, 261 Ga. 484, 485 (405 SE2d 470) (1991). See *Pneumo Abex v. Long*, 357 Ga. App. 17, 29 (849 SE2d 746) (2020) (noting that "this is a Court for the correction of errors of law, and if the trial court has not ruled on an issue, we will not address it. Indeed, without a ruling by the trial court on a particular issue, there is nothing for this Court to review upon appeal." (quotation marks omitted)). Here, although the trial court did not expressly address whether Greenhouse owed a duty of care to Giles, we can affirm a ruling on summary judgment if it is right for any reason, so long as the issue was before the court at the time the decision was issued. And here, because Giles alleged a negligence claim, the issue of whether Greenhouse owed such a duty to him was clearly before the court below. See

negligence claim, the court implicitly found that he satisfied the first element—duty.[16]

And notably, Greenhouse concedes that (as his landlord) it owed a duty of care to Giles. It was right to do so. In Georgia, landlords owe a duty of care to their tenants to keep an apartment complex safe.[17] But while Giles satisfied this element of his premises-liability claim, he must still satisfy *all* of the elements. This, he cannot do.[18]

2. Giles next contends the trial court erroneously resolved factual disputes in favor of Greenhouse by concluding it did not breach its duty of care to him. But as

---

*Cook Pecan Co., Inc. v. McDaniel*, 337 Ga. App. 186, 192 (786 SE2d 852) (2016) ("We may affirm the trial court's grant of summary judgment if it is right for any reason, whether stated or unstated, so long as the legal basis was fairly presented in the court below."). In any event, because our holding in Division 3 *infra* is fatal to Giles's claims, whether Greenhouse owed a duty of care to him is ultimately immaterial to the resolution of this appeal.

[16] See *Reg'l Fin. Co. of Ga., LLC v. Pearson*, 373 Ga. App. 388, 390, (908 SE2d 643) (2024) ("Georgia law provides that the threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care." (quotation marks omitted)).

[17] See *supra* note 14 & accompanying text.

[18] Giles complains at length that the trial court erred in excluding evidence of prior criminal activity in and around his apartment complex. In his view, this would show Greenhouse could reasonably foresee the risk of harm he faced by staying in his apartment. In this regard, our Supreme Court has explained that "[a] landlord's duty to exercise ordinary care to protect tenants against third-party criminal attacks extends *only* to *foreseeable* criminal acts." *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 785-86 (482 SE2d 339) (1997). And because we conclude that Giles failed to satisfy the causation element of his negligence claim, we need not consider whether the trial court erroneously excluded evidence of *unrelated* criminal activity in the area.

explained in Division 3, even crediting Giles's evidence and testimony as to any potential breaches that occurred, he fails to show that any of Greenhouse's actions or inactions were the *cause* of his injuries—which is a necessary element of a premises-liability claim.[19]

3. Next, Giles claims Greenhouse's breaches of its duty of care proximately caused his injuries from the September attack. We disagree.[20]

As to the causation element of Giles's negligence claim, our Supreme Court has explained that causation is an essential element of such a claim. And to establish proximate cause, a plaintiff must show a "legally attributable causal connection between the defendant's conduct and the alleged injury."[21] So, no matter how

---

[19] See *Tara Bridge Apartments, LP v. Benson*, 365 Ga. App. 647, 650 (879 SE2d 531) (2022) ("[N]o matter how negligent a party may be, if his act stands in no causal relation to the injury, it is not actionable. Indeed, the plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." (punctuation omitted)).

[20] The trial court did not reach the issue of causation in its order; but as we have already explained, we may affirm the trial court's decision if it is right for any reason, so long as the issue was raised below. See *supra* note 15. And because Greenhouse expressly argued in its motion for summary judgment that Giles could not establish the causation element of his negligence claim, we are permitted to reach and address the issue of causation.

[21] *Toyo Tire N. Am. Mfg., Inc. v. Davis*, 299 Ga. 155, 158 (787 SE2d 171) (2016). Accord *Newton's Crest Homeowners' Ass'n v. Camp*, 306 Ga. App. 207, 210 (702 SE2d

negligent a party may be, if his act "stands in no causal relation to the injury, it is not actionable."[22] Indeed, the plaintiff must introduce evidence "which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result."[23] Significantly, a mere possibility of such causation is not enough; and when the matter "remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant."[24] Lastly, it is a well-settled principle of negligence law that "the occurrence of an unfortunate event is not sufficient to authorize an inference of negligence."[25]

In support of Giles's claim that Greenhouse's breaches of its duty of care proximately caused the September 2020 assault, he references three pages of the

---

41) (2010).

[22] *Purvis v. Steve*, 284 Ga. App. 116, 119 (643 SE2d 380) (2007) (quotation marks omitted). Accord *Hudson v. Swain*, 282 Ga. App. 718, 721 (639 SE2d 319) (2006).

[23] *George v. Hercules Real Est. Servs., Inc.*, 339 Ga. App. 843, 845 (795 SE2d 81) (2016) (quotation marks omitted). Accord *Shadburn v. Whitlow*, 243 Ga. App. 555, 556 (533 SE2d 765) (2000).

[24] *George*, 339 Ga. App. at 845 (quotation marks omitted). Accord *Shadburn*, 243 Ga. App. at 556.

[25] *Wilson v. Guy*, 356 Ga. App. 509, 511 (848 SE2d 138) (2020) (quotation marks omitted). Accord *Wolfe v. Carter*, 314 Ga. App. 854, 859 (726 SE2d 122) (2012).

2,552-page record, provides three conclusory sentences, and lists several cases he believes support his position. More precisely, Giles cites to two pages of John Shelton's deposition and one page of his 60-page report. And while Giles refers to Shelton as an "expert," he does not identify Shelton's area of expertise or cite to any evidence establishing him as an expert in any specific field.

Giles also maintains that he "introduced the testimony and expert report of Shelton that the implementation of a reasonable security plan, as *described by Shelton*, would have prevented the September [a]ttack."[26] But in the two pages of Shelton's deposition that Giles cites, there is no "security plan" or explanation for how this alleged plan could have prevented the *targeted* attack on Giles; and neither does the single page of Shelton's report that Giles references. Giles has not identified *any* security measures, then, that Greenhouse could have taken to prevent the September attack.

Still, Giles claims he presented evidence that Greenhouse failed to follow its own procedures by "failing to investigate the incidents[,] [and] [t]his type of evidence has been regularly held to create a genuine issue of material fact." But Giles does not cite to *any* record evidence to support this assertion, and we will not "cull the record

---

[26] (Emphasis added).

on behalf of a party, particularly in a case such as this where the record is voluminous."[27] So, while Giles references several cases that he believes support this claim of error, the above statements constitute his entire argument as to the issue of causation.[28] Giles has failed, then, to detail any specific security measures Greenhouse could have taken that would have—more likely than not—prevented his assault in September 2020. As a result, given the summary nature of Giles's argument about causation, he has failed to show how a jury would not be left to speculate as to whether any security measures taken by Greenhouse could have prevented the attack—which is impermissible.[29]

---

[27] *Callaway v. Willard*, 351 Ga. App. 1, 5 (830 SE2d 464) (2019) (quotation marks omitted).

[28] Giles also summarily alleges that he presented evidence that the September 3 attack caused his injuries. Setting aside that one conclusory sentence is insufficient to present a cogent legal argument, it is undisputed that Giles was injured during that attack.

[29] See *Stadterman*, 361 Ga. App. at 614 (affirming the grant of summary judgment to landlord in a premises-liability case when the plaintiff failed to establish that even if the landlord had employed a courtesy officer, who may or may not have been present when the attack occurred, or ensured that a certain gate was locked when it may or may not have been broken, a jury would still be left to speculate as to whether inadequate security measures caused a shooting on the landlord's premises); *George*, 339 Ga. App. at 848 ("A jury would have to speculate that improvements to security patrols and lighting, and a repair to the fence, would have prevented the assailant from approaching [the plaintiff's] apartment unit and reaching through her window to gain entry into her apartment [despite the fact that certain employees had requested

4. In two other enumerations of error, Giles contends the trial court erred in finding that his claims are barred by the equal-or-superior-knowledge doctrine[30] and that he assumed the risk of harm by remaining on the property. But given our holding in Division 3, we need not address these arguments because Giles failed to establish the causation element of his negligence claim.

5. Finally, Giles argues the trial court erred in granting summary judgment to Greenhouse as to his requests for punitive damages and attorney fees. But as we have explained, an award of attorney fees, costs, and punitive damages is "derivative of a plaintiff's substantive claims."[31] As a result, Giles could only prevail on those claims

---

additional security measures prior to the attack]. *Speculation that raises a mere conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment.*" (quotation marks omitted)); *Walker v. Aderhold Properties, Inc.*, 303 Ga. App. 710, 714-15 (694 SE2d 119) (2010) ("[A] plaintiff must do more than merely speculate as to whether enhanced security measures would have prevented an attack. This is so because guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment.").

[30] See *Norman v. Jones Lang LaSalle Americas, Inc.*, 277 Ga. App. 621, 624 (627 SE2d 382) (2006) (explaining that a defendant is entitled to summary judgment if there is no evidence that it had superior knowledge or the undisputed evidence shows that the plaintiff's knowledge of the hazard was *equal to or greater* than that of the defendant).

[31] *Hobbs v. Integrated Fire Prot., Inc.*, 357 Ga. App. 790, 802 (4) (850 SE2d 256) (2020).

if he succeeded on his underlying substantive claim.[32] And because we have already held that Greenhouse was entitled to summary judgment as to Giles's premises-liability claim, the court did not err in granting summary judgment as to his requests for attorney fees and punitive damages.

For all these reasons, we affirm the trial court's grant of summary judgment to Greenhouse.

*Judgment affirmed. Mercier, J., and Senior Judge C. Andrew Fuller, concur.*

---

[32] See *id.* (holding that a plaintiff could not be awarded attorney fees or punitive damages when the defendant was entitled to summary judgment as to his underlying substantive claims).