**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A0653. CALLAWAY v. WILLARD.

A12A2323. DURHAM v. DURHAM, et al.

BRANCH, Judge.

These related appeals arise from a declaratory judgment action filed in Tattnall County Superior Court by William E. Callaway, Jr., in his capacity as Trustee of the Marjorie H. Durham Irrevocable Trust, to determine the effect of an in terrorem clause in the Trust documents. The Trust donor, Marjorie H. Durham, executed the inter vivos trust in 2000, naming herself as a beneficiary and her four children as residual beneficiaries. Following Mrs. Durham's death, Callaway filed a complaint for declaratory judgment against the four trust beneficiaries, seeking an order declaring that three of the beneficiaries, Wallace Bryant Durham ("Bryant"), Hugh Lee Durham ("Lee"), and Lucinda Durham Willard ("Lucinda"), had forfeited their respective

interests in the Trust estate under the in terrorem clause and that the entirety of the estate should therefore be distributed to the fourth beneficiary, Lawrence H. Durham. ("Lawrence").[1] Lawrence filed a counterclaim and a cross-claim and later moved for summary judgment, alleging that because he was the only child who did not violate the in terrorem clause, he is the sole beneficiary of the residue of the trust estate. Lucinda also filed a motion for summary judgment, alleging that she had not violated the in terrorem clause and remains a valid beneficiary of the trust. The trial court granted Lucinda's motion for summary judgment and denied Lawrence's. In Case No. A12A0653, Callaway appeals from the trial court's grant of summary judgment in favor of Lucinda. In Case No. A12A2323, Lawrence appeals the denial of his motion for summary judgment as to Bryant and Lee. For reasons explained below, we find no error in either case, and therefore affirm both orders of the trial court. We also remand Case No. A12A2323 for further proceedings consistent with this opinion.

The standard for summary judgment is well-settled:

Summary judgment is warranted when any material fact is undisputed, as shown by the pleadings and record evidence, and this fact entitles the

---

[1] During the pendency of this appeal, Lawrence H. Durham died. His son, Lawrence Cody Durham, was thereafter substituted as a party in his capacity as the personal representative of his father's estate.

moving party to judgment as a matter of law. So, to prevail on a motion for summary judgment, the moving party must show that there is no genuine dispute as to a specific material fact and that this specific fact is enough, regardless of any other facts in the case, to entitle the moving party to judgment as a matter of law.

(Citations omitted.) *Strength v. Lovett*, 311 Ga. App. 35, 39 (2) (714 SE2d 723) (2011). We review a trial court's ruling on summary judgment de novo, "viewing the evidence in the record, as well as any inferences that might reasonably be drawn from that evidence, in the light most favorable to the nonmoving party." (Citation and punctuation omitted.) *Beale v. O'Shea*, 319 Ga. App. 1, 2 (735 SE2d 29) (2012).

Here, the relevant facts in the record are undisputed, and the evidence shows that on or about April 13, 2000, Mrs. Durham executed an irrevocable trust agreement naming herself as a beneficiary and Callaway as trustee. The Trust instrument provided that, upon Mrs. Durham's death, the Trust assets would be divided according to Paragraph 4 (f), which states:

> all of the property remaining in the hands of the Trustee shall be distributed to my four children, with the properties designated as Trust Tract A being conveyed to Lawrence H. Durham in fee simple, and the properties designated as Trust Tract B being conveyed to Bryant Durham, Lee Durham and Lucinda D. Willard in fee simple. . . .

3

The Trust instrument also contains an in terrorem clause, which provides as follows:

> Should any one of my four children seek or file a legal or equitable challenge to the management decisions made or proposed by my trustee *during the administration of this Trust*, or pertaining to the management of the Trust Estate, or in regards to the final distribution of the Trust Estate, *and be unsuccessful* in said legal or equitable challenge, then said child or children shall, as of said date that *the challenge is determined adversely to* said child or children, forfeit any right, title or interest in said Trust Estate, and the said interest of the child or children making such challenge, less all reasonable attorney fees and expenses incurred by my Trustee, shall pass in the final distribution of the Trust Estate in fee simple to the remaining child or children who did not join in said legal or equitable challenge, and my Trustee shall make, in his sole discretion, any necessary division of the two Trust Tracts so as to maintain the above stated plan for the division of ownership of said Trust Estate between my children.

(Emphasis supplied.)

*The Evans County Action*

On March 2, 2001, approximately one year after the creation of the Trust, Bryant and Lee filed suit in the Superior Court of Evans County against Callaway, individually and in his capacity as trustee. They subsequently filed an amended

4

complaint, alleging that Callaway was Lawrence's personal attorney and that he functioned as Lawrence's agent ; that Lawrence was significantly indebted to Mrs. Durham and stood to benefit disproportionately from the testamentary provision of the Trust; that Callaway had drafted the Trust instrument so as to guarantee himself an annual income of $35,000 from the Trust, regardless of whether he performed any services for the Trust and regardless of whether the Trust had liquid assets available to pay him; that Mrs. Durham lacked the requisite mental capacity to execute the Trust instrument, a warranty deed transferring certain real property to the Trust, and her affirmation of the Trust; and that both the Trust and Mrs. Durham's subsequent affirmation of the Trust were null and void, because they resulted from Lawrence's exercise of undue influence, coercion, and duress against Mrs. Durham. The complaint therefore sought an order: (i) setting aside the Trust and Mrs. Durham's later ratification of the Trust; (ii) canceling the warranty deed conveying property to the Trust; (iii) ordering an accounting of Trust property; and (iv) removing Callaway as Trustee and appointing a different, temporary trustee pending the outcome of the litigation. The complaint also sought an award of damages against Callaway.

On June 6, 2001, Bryant and Lee filed a motion in the Evans County action seeking an injunction and temporary restraining order to prevent Callaway from

liquidating certain timber assets owned by the Trust. The motion, which sought to preserve the status quo pending a decision in the Evans County action, requested entry of an order that would allow Callaway to encroach upon Trust assets, but only after first receiving permission from the court to do so. Although no ruling on this motion appears in the record, there is some evidence indicating that an order was entered requiring Callaway, at least under some circumstances, to obtain court approval before encumbering trust assets.

At a hearing held on October 29, 2001, the trial court discussed with counsel for all parties the possibility of staying the Evans County action pending the resolution of the guardianship proceeding then ongoing in Tattnall County. Specifically, the court noted that the issue of whether Mrs. Durham met the standard for guardianship could also resolve one of the central issues in the Evans County action, namely whether Mrs. Durham was competent to execute the Trust instrument, the warranty deed, and the affirmation of the Trust. The parties agreed, and on November 6, 2001, the trial court entered an order staying the Evans County action pending the outcome of the guardianship proceeding. On April 19, 2002, several months after the Petition for Guardianship was denied, Bryant and Lee voluntarily dismissed the Evans County action.

6

*The Guardianship Action*

On May 17, 2001, Bryant, Lee, and Lucinda filed a petition for guardianship of their mother in the Probate Court of Tattnall County. The guardianship was sought on the grounds that Mrs. Durham was incapacitated by Alzheimer's disease. As part of the guardianship proceeding, Mrs. Durham underwent a court-ordered medical exam, and the examining physician reported that, in his opinion, she did not meet the standard for guardianship. Based on this report, the probate court dismissed the guardianship petition, and Bryant, Lee, and Lucinda appealed that decision to the Tattnall County Superior Court.

Following a trial on the issue of Mrs. Durham's competency, a jury found that she was not incapacitated. The Tattnall County Superior Court entered judgment on that verdict and denied the guardianship petition on January 10, 2002.

*The Current Action*

Following Mrs. Durham's death in 2009, Callaway filed the current action seeking a declaratory judgment that Bryant, Lee, and Lucinda had violated the in terrorem clause of the Trust instrument, had thereby forfeited their rights to inherit under that instrument, and that all Trust property should therefore be distributed to Lawrence. In response, Lawrence filed a counterclaim against Callaway and cross-

7

claims against each of his siblings. Lawrence also sought an order holding that Bryant, Lee, and Lucinda had forfeited their rights in Mrs. Durham's estate and that Callaway should therefore distribute all Trust property to Lawrence.

Lucinda filed motions for summary judgment against both Callaway and Lawrence as to the claims asserted by each against her. Lawrence responded by filing a motion for summary judgment on his counterclaim against Callaway and his cross-claims against his siblings. On July 6, 2011, the trial court entered two separate orders, one of which granted Lucinda's motion for summary judgment against Callaway and entered final judgment in her favor, and the other of which granted Lucinda's motion for summary judgment against Lawrence, denied Lawrence's motion for summary judgment as to Lucinda, and entered final judgment in Lucinda's favor. The following week, the trial court entered an order denying Lawrence's motion for summary judgment as to his cross-claims against Bryant and Lee. The trial court subsequently certified that order for immediate review. These appeals followed. In Case No. A12A0653, we address whether the guardianship proceedings violated the in terrorem clause; in Case No. A12A2323, we address whether the Evans county action violated that clause.

8

1. Before addressing the individual appeals, we first note that the terms of the in terrorem clause at issue show that a beneficiary violates that clause only if two conditions are met. First, the beneficiary must "seek or file" an action that challenges either: (i) "the management decisions made or proposed by [the] Trustee *during the administration of th[e] Trust*"; (ii) "the management of the Trust Estate"; or (iii) "the final distribution of the Trust Estate." (Emphasis supplied.) Second, the beneficiary must be unsuccessful in his or her challenge – i.e., the challenge must be "determined adversely to" the beneficiary.

We further note that although in terrorem "clauses are permitted by statute, [OCGA § 53-12-22 (b)], [they] are not favored in the law." (Citation omitted.) *Linkous v. National Bank of Ga.*, 247 Ga. 274 (274 SE2d 469) (1981). Furthermore, "[b]ecause in terrorem clauses result in forfeitures, they must be strictly construed." (Footnote omitted.) *Preuss v. Stokes-Preuss*, 275 Ga. 437 (569 SE2d 857) (2002). Further, our Supreme Court has held that, as a matter of public policy, in terrorem clauses may not be construed so as to immunize a fiduciary from the law that imposes certain duties upon and otherwise governs the actions of such fiduciaries. See *Sinclair v. Sinclair*, 284 Ga. 500, 502-503 (2) (670 SE2d 59) (2008) (holding that "a condition

in terrorem *cannot* make [a fiduciary] unanswerable for any violations of . . . the laws governing personal representatives in Georgia") (emphasis supplied).

Bearing in mind both the terms of the in terrorem clause at issue and the relevant law governing the interpretation of that clause, we now turn to the merits of these appeals.

*Case No. A12A0653*

2. In this appeal, Callaway challenges the order granting Lucinda's motion for summary judgment against him and entering final judgment in Lucinda's favor, arguing that the trial court erred in finding that the filing of the guardianship petition did not violate the in terrorem clause and that Lucinda was not a party to the Evans County action. We find no merit in either of these claims.

(a) The guardianship petition alleged that Mrs. Durham had been diagnosed with Alzheimer's disease in October, 1998; that she had refused treatment for the disease since October, 1999; and that as a result she was incapacitated. The petition therefore sought the appointment of a guardian over Mrs. Durham's "person and/or property." The petition did not mention the Trust or the trustee. Moreover, by simply seeking control over Mrs. Durham's property, by its terms the petition did not seek control over any property held by the Trust. Accordingly, the filing of the

10

guardianship petition did not violate the in terrorem clause, as it did not challenge the management decisions of the trustee, the management of the Trust estate, or the final distribution of the Trust estate.

Callaway, however, seeks to avoid this obvious conclusion. First, Callaway points to the fact that the attorney who represented Bryant and Lee in the Evans County action also represented the brothers and Lucinda with respect to the guardianship petition. He then cites to the following statement made by that attorney, John Tatum, to the court during a hearing in the Evans County action, approximately one month before the guardianship petition was filed:

> This is a suit actually to set aside a trust. . . . I do indeed represent Mrs. Durham's - two of her children and possibly could a third. They are convinced that their mother is incompetent. . . . She is an incompetent person who does not have an appointed representative at this time because . . . there's been no guardianship proceeding. We intend to initiate a guardianship proceeding . . . in [Mrs. Durham's] home county. And if – *and at the conclusion of that, then we would substitute the appointed guardian in lieu of the two sons as next friend.*

(Emphasis supplied.)

Relying on this statement, Callaway argues that the underlying purpose of the guardianship action was to facilitate the Evans County action and so the guardianship

petition should be viewed as part of that action. So viewed, says Callaway, as the Evans County action violated the in terrorem clause so did the guardianship petition.

Callaway's argument on this issue is without merit. Notably, it ignores the fact that the guardianship petition did not, in fact, facilitate the Evans County action. In other words, the Evans County action could, and did, exist regardless of whether Bryant, Lee, and Lucinda filed a guardianship petition. More importantly, however, this argument also ignores the legal requirement that an in terrorem clause be construed narrowly. So construed, the plain language of the clause at issue applies only to those actions that, in and of themselves, constitute a *direct* challenge to either the management decisions of the trustee, the overall management of the Trust estate, or the final distribution of the Trust estate. We cannot, as a matter of law, broaden this language so that the in terrorem clause encompasses actions that may be merely ancillary or indirectly related to actions that constitute such a direct challenge. See *Sinclair*, supra at 502; *Preuss*, supra at 437.

(b) Callaway also contends that the trial court erred in finding that Lucinda was not a party to the Evans County action, arguing the evidence shows that although she was not a named party, she was a de facto party to that proceeding. Again, however, this argument ignores the law requiring us to construe in terrorem clauses narrowly.

12

We are therefore constrained to interpret the clause in this case as meaning that before a beneficiary will be deemed to have forfeited his or her right to inherit, he or she must have been an actual, named party to some proceeding that challenged the management decisions of the trustee, the overall management of the Trust estate, or the final distribution of the Trust estate. And it is undisputed that Lucinda was not a named party to the Evans County action.

Moreover, we note that Callaway has offered no evidence to prove his claim that Lucinda was a de facto party to the Evans County action. In support of his argument, Callaway relies on two statements by attorney John Tatum regarding his potential and actual representation of Lucinda. The first of those statements is the one set forth above, made to the court in the Evans County action. The second statement was made by Tatum during a deposition taken as part of the Evans County litigation. At the outset of that deposition, Tatum introduced himself to the witness and said: "I represent . . . two of Mrs. Durham's sons and . . . her daughter, three of her four children."

Despite Callaway's assertions to the contrary, neither of these statements shows that Lucinda was a de facto party to the Evans County action. In his statement to the court, Tatum did not claim to represent Lucinda with respect to the Evans County

13

case; rather, he told the court that, as of that time, he represented two of Mrs. Durham's children and "*possibly* could a third." (Emphasis supplied.) And read in context, the most logical interpretation of this statement is that, at that time, Tatum simply thought there was a possibility that Lucinda would be a named party in the Evans County action. That possibility, however, never became a reality. Additionally, when Tatum stated to the deposition witness that he represented three of Mrs. Durham's four children he was, in fact, representing Bryant, Lee, and Lucinda in the guardianship proceedings. That statement therefore, cannot be interpreted as meaning that Tatum represented Lucinda in the Evans County action.

Most importantly, the conclusion that Lucinda was not a party to the Evans County action, as well as the conclusion that Tatum did not represent her with respect to that action, is supported by the only sworn testimony of record. In support of her motion for summary judgment, Lucinda submitted both her own sworn affidavit as well as the affidavit of attorney Tatum. In her affidavit, Lucinda averred that she was not a party to the Evans County action, she did not file the Evans County action, and she did not seek a legal or equitable ruling through the Evans County action. Lucinda further stated that while Tatum represented her with in the guardianship proceedings, he did not represent her with respect to the Evans County action. Tatum's affidavit

contained substantively identical testimony, with Tatum averring that Lucinda was not a party to the Evans County action and that neither he nor his law firm represented her with respect to that action. . Given that this evidence was uncontroverted, the trial court did not err in concluding that Lucinda was not a party to the Evans County action. See *Strength*, supra at 39 (2) (where on a motion for summary judgment a defendant presents evidence that defeats an essential element of the plaintiff's case, "the plaintiff cannot rest on his pleadings, but rather must point to specific evidence [in the record] giving rise to a triable issue") (citation and punctuation omitted). Accordingly, we affirm the trial court's grant of summary judgment in favor of Lucinda and against Callaway, as well as the entry of final judgment in favor of Lucinda.

*Case No. A12A2323*

3. In this case, Lawrence contends that the trial court erred in denying his motion for summary judgment as to his claims against Bryant and Lee because both the guardianship proceedings and the Evans County action violated the in terrorem clause as a matter of law, and because Bryant and Lee were unsuccessful in both those actions. Lawrence further asserts that Bryant and Lee violated the in terrorem clause when they filed their motion in the Evans County action for injunctive relief, seeking

15

to prevent Callaway from liquidating or encumbering Trust assets. Lawrence's claim as to the guardianship proceeding is mooted by our finding in Division 2, that the filing of the guardianship petition did not violate the in terrorem clause. We further find, as matter of law, that neither the filing of the complaint in Evans County nor Bryant and Lee's motion for injunctive relief violated the in terrorem clause.

(a) We first address whether the allegations contained in and the relief sought by way of the Evans County complaint shows that the filing of that complaint violated the in terrorem clause – i.e., whether the allegations made or the relief requested challenged either Callaway's management decisions during his administration of the Trust, his overall management of the Trust estate, or the final distribution of the Trust estate.

As noted supra, the Evans County complaint alleged, in part, that Mrs. Durham lacked the requisite mental capacity to execute the Trust instrument, the warranty deed transferring certain real property to the Trust, and her affirmation of the Trust; and that both the Trust and Mrs. Durham's subsequent affirmation of the Trust were null and void, because they resulted from Lawrence's exercise of undue influence, coercion, and duress against Mrs. Durham. With respect to these claims, the complaint sought an order: (i) setting aside the Trust and Mrs. Durham's later ratification of the Trust;

16

and (ii) canceling the warranty deed conveying property to the Trust. We find that the allegations regarding Mrs. Durham's incompetency and the resulting requests to have the Trust, the Trust ratification, and the warranty deed set aside did not violate the in terrorem clause, as they in no way related to the management of the Trust estate, nor did they challenge either Callaway's management decisions in administering the Trust or the final distribution of the Trust estate. Rather, these allegations and requests for relief challenged the validity of the Trust and the Trust documents.

The Evans County complaint further alleged that Callaway had long served as Lawrence's personal attorney; that he had drafted the Trust instrument so as to guarantee himself payment of at least $35,000 per year, regardless of whether he actually performed any services as trustee and regardless of whether the Trust had liquid assets available to pay him; and that he had drafted the Trust instrument so as to favor his long-time client, Lawrence, at the expense of both Mrs. Durham and Lawrence's siblings. With respect to these allegations, the complaint sought the removal of Callaway as the trustee, an accounting of Trust property, and the payment of damages. These allegations, and the relief sought based thereon, were based upon Callaway's ethical and fiduciary conduct in setting up the Trust. As such, they challenged certain provisions in the Trust documents and Callaway's appointment as

17

trustee; they did not challenge Callaway's conduct in administering, managing, or distributing the Trust, after he became the trustee. Specifically, Bryant and Lee sought the removal of Callaway as trustee and an accounting of Trust assets not because of any decisions or conduct by Callaway in managing those assets; rather, they sought that relief because, based on Callaway's alleged conflict interest, he had not and could not fulfill his fiduciary duties as trustee. Given that in terrorem clauses cannot be construed so as to immunize fiduciaries from Georgia law governing the actions of such fiduciaries, we find that the filing of the complaint in Evans County did not violate the in terrorem clause. See *Sinclair*, supra at 504 (2) (holding that an "in terrorem clause *does not and cannot* require forfeiture of [a beneficiary's] interest if he files [an] action for accounting and removal of [e]xecutor") (emphasis supplied). See also *Snook v. Sessoms*, 256 Ga. 482, 482 (350 SE2d 237) (1986) (holding that as a matter of law, a beneficiary may file an action seeking to require a trustee to comply with his fiduciary duties, without violating an the terrorem clause contained in the trust documents); OCGA § 53-12-221 (a) (2) ("A trustee may be removed . . . [u]pon petition to the court by any interested person showing good cause.")

(b) Nor do we find that Bryant and Lee's motion for injunctive relief, filed as part of the Evans County action, constitutes a "legal or equitable challenge" to a

18

management decision of Callaway in administering the Trust or in managing the Trust estate. And this motion in no way challenged the final distribution of the Trust estate.

While on its face the motion might appear to challenge a decision of Callaway in administering the Trust or in managing Trust assets, the allegations contained in that pleading make clear that such a challenge was not its purpose. Rather, that motion alleged that Callaway was attempting to circumvent both the Evans County case and the guardianship petition by liquidating certain Trust assets, even though he might not be legally authorized to do so. Thus, the motion's purpose was to attempt to maintain the status quo pending the resolution of the questions presented by both the Evans County action and the guardianship petition – i.e., pending a decision on whether the Trust was valid and, if so, whether, given his conflict of interest, Callaway was the proper trustee. We find that Lee's and Bryant's attempt to seek the maintenance of the status quo pending the resolution of the main action did not violate the in terrorem clause. As noted above, that action questioned both Callaway's ethical and fiduciary conduct in creating the Trust and in drafting the Trust documents, as well as his ability to fulfill his fiduciary duties as trustee. In light of the relevant law, and given our obligation to apply the in terrorem clause narrowly, we find that the filing of the

motion for injunctive relief did not violate that clause. See *Sinclair*, supra at 503-504 (2); *Snook*, supra at 482.

Given our finding that the filing of the Evans County complaint did not violate the in terrorem clause, we need not decide whether Lee and Bryant's voluntary dismissal, entered before the trial court definitively ruled on any of the claims in the amended and restated complaint, means that the brothers were unsuccessful with respect to that complaint. For the same reason, we need not decide whether Lee and Bryant were unsuccessful on their motion seeking injunctive relief in the Evans County action.[2]

For the reasons set forth above, we affirm the orders of the trial court in Case No. A12A0653, granting Lucinda's motions for summary judgment against Callaway and Lawrence, denying Lawrence's motion for summary judgment as to Lucinda, and entering final judgment in favor of Lucinda. We also affirm the order of the trial court in Case No. A12A2323, denying Lawrence's motion for summary judgment as to his

_____

[2] We again note, however, that there is some evidence in the record indicating that Lee and Bryant did have some success with respect to this motion. As explained earlier, although no ruling on this motion appears in the record, the evidence indicates that an order was entered requiring Callaway, at least under some circumstances, to obtain court approval before encumbering Trust assets.

claims against Bryant and Lee, and remand that case for further proceedings consistent with this opinion.

*Judgment affirmed in Case No. A12A0653. Judgment affirmed and case remanded in Case No. A12A2323. Miller, P. J., and Ray, J., concur.*