**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 11, 2021**

# In the Court of Appeals of Georgia

A21A0258. DUNCAN et al. v. RAWLS et al.

DILLARD, Presiding Judge.

Olga Rawls and Javier Goizueta ("petitioners")—as trustees of a family trust created by their late mother Olga Casteleiro de Goizueta—brought an action against fourteen putative beneficiaries ("respondents"), seeking declaratory judgment that the trust was valid and claiming the respondents forfeited their distributions based on the trust's in-terrorem (or no-contest) provision. Respondents challenged that provision and asserted counterclaims of undue influence, tortious interference with the expectation of a bequest, and breach of fiduciary duty, but the trial court granted summary judgment in favor of petitioners. Respondents appealed, and in *Duncan v. Rawls* (*Duncan I*),[1] we affirmed the trial court's ruling as to the general validity of the

---

[1] 345 Ga. App. 345 (812 SE2d 647) (2018) (en banc).

in-terrorem provision and held that it was enforceable as to respondents' undue-influence claim, but reversed the court's ruling that the clause was enforceable as to their breach-of-fiduciary-duty claim and remanded for the court to independently consider the clause's applicability to respondents' tortious-interference claim.[2] Thereafter, petitioners again moved for summary judgment, arguing that the in-terrorem provision applied to respondents' tortious-interference claim and that respondents' breach-of-fiduciary-duty claim failed as a matter of law. The trial court granted summary judgment in favor of petitioners, and respondents now appeal. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to respondents (*i.e.*, the nonmoving parties),[3] the record shows that on September 11, 2012, Olga Casteleiro de Goizueta—heir to the fortune of her late husband Roberto Goizueta[4]—executed a

---

[2] *See id.* at 348-52 (1) (a), 2 (a) (b).

[3] *See, e.g.*, *Swanson v. Tackling*, 335 Ga. App. 810, 810 (783 SE2d 167) (2016).

[4] Roberto Goizueta was chairman, director, and chief executive officer of The Coca-Cola Company from 1980 until his death in 1997, and was perhaps equally well-known for his numerous philanthropic endeavors via the establishment of the Goizueta Foundation. *See Roberto Goizueta*, WIKIPEDIA, https://en.wikipedia.org/wiki/Roberto_Goizueta (last visited May 24, 2021).

durable power of attorney ("POA"), granting authority to her son Javier Goizueta and daughter Olga Rawls to undertake a variety of actions in her name and on her behalf. These actions included the power to create, revoke, or amend any trust for Mrs. Goizueta's benefit, as well as "to do anything that I could do personally or as Trustee." And immediately following this document's general grant of authority, Mrs. Goizueta's POA also provided that ". . . my agent(s) shall exercise the powers granted under this power of attorney only for my benefit (or for the benefit of my dependents or my descendants as specifically provided below) and as a fiduciary for me."

In February 2013, Mrs. Goizueta executed the 31st Amendment and Restatement of her revocable pourover trust (the "February 2013 trust"), naming herself as the initial trustee and Javier Goizueta and Olga Rawls as first successor trustees. Additionally, the trust expressly reserved Mrs. Goizueta's "right to alter, amend, modify, or revoke this trust in whole or in part at any time . . . by instrument in writing signed by [her] and delivered to the Trustee." The February 2013 trust further provided that—other than the "Ten Dollars" paid to establish the trust—Mrs. Goizueta did not expect the trust to hold additional assets during her lifetime and, thus, that the trustees would have "no duties or obligations whatsoever during [her] lifetime." Schedule B to this trust provided for specific monetary gifts for fifteen of

3

Mrs. Goizueta's staff and employees—fourteen of whom are respondents in this matter[5]—to be distributed upon her death. But the trust provided that Mrs. Goizueta reserved the right to change these gifts by a written instrument signed by her and the trustees, and also noted that the trustees had absolute discretion "to determine the validity of any such written instrument amending Schedule B." And indeed, in March 2013, Mrs. Goizueta exercised that right and amended Schedule B to reduce the amounts provided to some of the respondents.

On August 1, 2013, Mrs. Goizueta executed the 32nd Amendment and Restatement of her revocable pourover trust, which expressly "amend[ed] and restate[d] the [pourover trust], as in effect immediately prior to the execution of [the August 2013 Trust] instrument, in its entirety." This August 2013 trust contained the same essential terms as the February 2013 trust with the notable exception that the latter instrument did not include Schedule B. Rather, it directed the trustee to use the Goizueta Family 2013 Trust ("Family Trust"), which was executed that same day, to fund charitable annuity payments to seventeen charitable organizations. Importantly,

---

[5] As noted in *Duncan I*, the fourteen respondents are Jenifer Duncan, Jennifer Curry, Amanda Smith, Shelia McCloud, Rosalba Arellano Jones, Judy Cunningham, Gloria Espinosa, H.L. Bowen, Clyde Thomas Padgett, W.F. Timms, E.G. Brown, C.W. Payne, Stephen W. Norman, and Joseph Cochran. *See Duncan*, 345 Ga. App. at 345 n.1.

4

the August 2013 trust also contained a "No Contest Provision,"[6] which provides, in relevant part, that under the following condition:

> Should any beneficiary, singly or in conjunction with any other person or persons, directly or indirectly (whether or not in good faith and with probable cause) . . . , contest or initiate proceedings to contest in any court the validity of all or any part of my Will or this Agreement or any other trust created by me or, in any manner, attack or seek to impair or invalidate any of the provisions of my Will or this Agreement or any other trust created by me or to prevent any provision of my Will or this Agreement or any other trust created by me from being carried out in accordance with its terms . . . then all benefits provided for such beneficiary under this Agreement or any other trust created by me . . . are revoked and annulled unless my Executor or my Trustee approves in advance in writing any such action on the basis that it is in the best interest of my estate or trust.

Additionally, in the aforementioned and contemporaneously executed Family Trust, Mrs. Goizueta named Olga Rawls and Javier Goizueta as initial trustees, as opposed to merely successor trustees as she had done in the February 2013 trust. But unlike the pourover trust, the Family Trust was irrevocable from its inception. This trust also provided that "[t]he Trustee shall make no distributions from this trust until

---

[6] The February 2013 Trust included a nearly identical "No Contest Provision."

the death of the Grantor." And it further directed: "As soon as possible after [Mrs. Goizueta's] death . . . assets of the trust . . . shall be distributed to or among such individuals . . . as the Trustee shall determine in its sole and absolute discretion."

Mrs. Goizueta passed away in November 2015, and soon thereafter, petitioners—and now trustees—made distributions to twelve of the fourteen respondents from the Family Trust in amounts less than those listed in Schedule B of the February 2013 pourover trust but, nonetheless, totaling approximately $1.4 million. Subsequently, respondents retained counsel, who sent a letter to the petitioners requesting that, the August 2013 trust notwithstanding, they pay the full amounts provided in Schedule B of the February 2013 trust.

The petitioners responded with an action in Fulton County Superior Court, seeking a declaratory judgment that the August 2013 trust was valid and claiming that respondents forfeited the distributions made to them from the Family Trust based on the in-terrorem provision contained in the August 2013 trust. Respondents filed an answer and counterclaims, alleging that petitioners unduly influenced Mrs. Goizueta to execute the August 2013 trust, which eliminated the specific gifts to respondents provided in Schedule B to the February 2013 trust. In addition, respondents sought a declaration that the in-terrorem provision in the August 2013 trust was

6

unenforceable to the extent it precluded them from asserting claims of undue influence, tortious interference with the expectation of a bequest, and breach of fiduciary duty by petitioners.

The petitioners filed a motion for partial summary judgment on respondents' counterclaim regarding the enforceability of the in-terrorem provision, which the trial court granted following a hearing. Respondents appealed, and this Court affirmed the trial court's ruling as to the general validity of the August 2013 trust's in-terrorem provision under former OCGA § 53-12-22 (b), which simply provided: "A condition in terrorem shall be void unless there is a direction in the trust instrument as to the disposition of the property if the condition in terrorem is violated, in which event the direction in the trust instrument shall be carried out."[7] We further held that the clause

_____

[7] *See Duncan*, 345 Ga. App. at 347 (1) (a) ("We first agree with the trial court that the in terrorem clause meets the requirement found in OCGA § 53-12-22 (b), the only Georgia statute that addresses in terrorem clauses in trusts."). Effective January 1, 2021, the statute was amended to add a clause to subsection (b) ("except as otherwise provided in subsection (c) of this Code section") and a new subsection (c) that reads: "(c) A condition in terrorem shall not be enforceable against an individual for: (1) Bringing an action for interpretation or enforcement of a trust instrument; (2) Bringing an action for an accounting, for removal, or for other relief against a trustee; or (3) Entering into a settlement agreement." *See* Ga. L. 2020, Act 508, § 1-74.

7

was enforceable as to respondents' undue-influence claim,[8] but we reversed the trial court's ruling that the clause was enforceable as to their breach-of-fiduciary-duty claim,[9] without addressing the specifics of that claim, and remanded for the trial court to independently consider the clause's applicability to respondents' tortious-interference claim.[10]

On remand, petitioners again moved for summary judgment, arguing that the in-terrorem provision in the August 2013 trust should be enforced as to respondents' tortious-interference-with-the-expectation-of-a-bequest claim and that they did not owe respondents any fiduciary duties as a matter of law. Respondents filed a brief in opposition, and after a hearing on the matter, the trial court—in a well-crafted order—granted summary judgment in favor of petitioners on both of their arguments. This appeal follows.

---

[8] *See Duncan*, 345 Ga. App. at 348 (1) (b) (concluding that in-terrorem clauses protecting against an undue-influence challenge are allowed under Georgia law with only one codified limitation, that being the disposition of the forfeited property in the event the clause is violated).

[9] *See id.* at 351-52 (2) (a) (holding that a breach-of-fiduciary-duty claim is subject to the exception to enforcement of in-terrorem clauses).

[10] *See id.* at 352 (2) (b) (holding that trial court failed to address claim of tortious interference with the expectation of a bequest and whether such a claim also falls into the exception to enforcement of in-terrorem clauses).

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[11] If summary judgment is granted, it enjoys no presumption of correctness on appeal, and an appellate court must satisfy itself that the requirements of OCGA § 9-11-56 (c) have been met.[12] And in conducting this *de novo* review, we are charged with "viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence in the light most favorable to the nonmovant."[13] Bearing these guiding principles in mind, we turn to respondents' specific claims of error.

1. Respondents first contend that the trial court erred in concluding that the in-terrorem provision applied to respondents' tortious-interference-with-the-expectation-of-a-bequest claim. We disagree.

---

[11] OCGA § 9-11-56 (c).

[12] *See Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) ("Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met.").

[13] *Benefield v. Tominich*, 308 Ga. App. 605, 607 (1) (708 SE2d 563) (2011) (punctuation omitted); *accord Swanson*, 335 Ga. App. at 810.

9

Although in-terrorem clauses are permitted by statute they "are not favored in the law."[14] And importantly, because in-terrorem clauses "result in forfeitures, they must be strictly construed."[15] Nevertheless, in-terrorem clauses are enforceable against challenges to a will or trust itself, such as a caveat that seeks to destroy such instruments altogether, and no good faith/probable cause exception exists.[16] But the appellate courts of this State have also held that "a beneficiary [of a trust] assuredly is empowered to enforce the provisions of a trust, no matter the terms of any in terrorem clause."[17] Consequently, in order to determine whether a claim impermissibly challenges the trust itself or, rather, only seeks to enforce the provisions of a trust, courts must "construe the relevant in terrorem clause and

---

[14] *Callaway v. Willard*, 321 Ga. App. 349, 353 (1) (739 SE2d 533) (2013) (punctuation and citation omitted).

[15] *Id.* (punctuation omitted); *accord Preuss v. Stokes Preuss*, 275 Ga. 437, 438 (569 SE2d 857) (2002).

[16] *See Duncan*, 345 Ga. App. at 350 (1) (b) (holding that there is no statutory good faith/probable cause exception to enforcement of in-terrorem clauses in the Trust Code and no provision for a public-policy exception in OCGA § 53-12-22); *see also Norman v. Gober*, 292 Ga. 351, 354 (1) (737 SE2d 309) (2013) (finding that caveat filed by grandchild of testator constituted a will contest triggering the in-terrorem clause in will, when caveator initiated proceedings to contest the will).

[17] *Snook v. Sessoms*, 256 Ga. 482, 482 (350 SE2d 237) (1986) (punctuation omitted); *accord Duncan*, 345 Ga. App. at 351 (2) (a).

10

compare it to the action proposed by the petitioner in the declaratory judgment action."[18]

Here, as previously noted, the in-terrorem (or no-contest) provision in the August 2013 trust, in relevant part, provides:

> Should any beneficiary, singly or in conjunction with any other person or persons, directly or indirectly . . . contest or initiate proceedings to contest in any court the validity of all or any part of my Will or this Agreement . . . or, in any manner, attack or seek to impair or invalidate any of the provisions of my Will or this Agreement or any other trust created by me . . . then all benefits provided for such beneficiary under this Agreement or any other trust created by me . . . are revoked and annulled[.]

And in this matter, respondents' counterclaim alleged that the petitioners interfered with their expectation of gifts from the February 2013 trust and Schedule B by "caus[ing] documents to be executed that purport to eliminate the [February 2013 trust] . . . through the exercise of undue influence . . . to overcome their mother's free will[.]" Respondents further alleged that petitioners "knew that their mother desired to give bequests to [them] in accord with the February 26, 2013 Schedule B, but

---

[18] *In re Estate of Burkhalter*, 343 Ga. App. 417, 423 (2) (806 SE2d 875) (2017); *see, e.g.*, *Sinclair v. Sinclair*, 284 Ga. 500, 503 (2) (670 SE2d 59) (2008).

[petitioners] intentionally acted to subvert their mother's actual wishes." But despite respondents' arguments that these allegations support their separate and distinct claim for tortious interference with the expectation of a bequest,[19] we agree with the trial court that this is a distinction without any discernible difference from their claim that the revocation of the February 2013 trust and Schedule B was a product of undue of influence. Indeed, the *only* tortious conduct respondents alleged is that petitioners exercised undue influence over Mrs. Goizueta, causing her to revoke the instruments that provided respondents more lucrative benefits.[20]

Respondents further argue that the in-terrorem clause does not apply to their tortious-interference claim because the clause does not explicitly provide that such claims will trigger it. But this contention is foreclosed by *Duncan I*, in which we held that the very same no-contest provision at issue here applied to respondents' undue-

[19] *See Mitchell v. Langley*, 143 Ga. 827, 835 (85 SE 1050) (1915) (establishing the elements of tortious interference with an economic expectancy by holding that, when an intending testator has actually taken steps toward perfecting a gift or devise, so that if let alone the right of the beneficiary will cease to be inchoate and become perfect, an action will lie if (1) it is maliciously and fraudulently destroyed, and (2) the benefit diverted to the person so acting, thus occasioning loss to the person who would have received it).

[20] *See In re Estate of Burkhalter*, 343 Ga. App. at 422 (2) (holding that a declaration that a proposed action will not violate an in-terrorem clause is limited to the type of proposed action that the petitioner has described).

12

influence claim, despite such claim not being expressly addressed in that provision.[21] Given these circumstances, the trial court did not err in concluding that respondents' claim for tortious interference with the expectation of a bequest is a claim that seeks to challenge the validity of the August 2013 trust rather than simply enforce its terms, just as their undue-influence claim did, and, thus, the in-terrorem provision applies.[22]

2. Respondents further contend that the trial court erred in granting summary judgment on the ground that respondents' breach-of-fiduciary-duty claim failed as a matter of law. Again, we disagree.

Under Georgia law, a claim for breach of fiduciary duty "requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach."[23] And the party asserting the existence of a fiduciary or confidential relationship "bears the burden of establishing its

---

[21] *See supra* note 8 & accompanying text.

[22] *See In re Estate of Johnson*, 352 Ga. App. 164, 167-68 (834 SE2d 283) (2019) (concluding that in-terrorem clause applied because there was no merit to petitioners' argument that they sought only an interpretation of the will when it is clear from the plain language of their proposed declaratory judgment action that they sought to void any bequest to father's fiancee or any involvement by fiancee in the father's estate).

[23] *AgSouth Farm Credit, ACA v. West*, 352 Ga. App. 751, 755 (1) (835 SE2d 730) (2019) (punctuation omitted).

existence."[24] And here, respondents claim that petitioners breached their fiduciary duties owed to them by exerting undue influence over Mrs. Goizueta to procure the March 2013 Amendment, which reduced the amount of the bequests they would have received under Schedule B, and to procure the August 2013 trust, which eliminated those specific bequests. Respondents also allege that petitioners breached fiduciary duties owed under the Family Trust by not distributing bequests to respondents as per their mother's wishes. Respondents further argue that petitioners breached duties they owed respondents derivatively under the 2012 POA. But these claims all lack merit.

(a) *The March 2013 Amendment and August 2013 Trust*. Respondents assert that petitioners breached their fiduciary duties owed under the February 2013 trust when they allegedly unduly influenced their mother to revoke that instrument and create the March 2013 Amendment, and later, the August 2013 trust instead. But petitioners did not owe respondents any duty under the February 2013 trust.

It is axiomatic that the terms of a trust are "whatever the settlor intended them to be at the time of the creation of the trust so long as those terms are permitted by

---

[24] *Id.* (punctuation omitted).

law."[25] And in interpreting trusts (such as those at issue here), we look first and foremost to "the language therein and interpret that language to effectuate the intent of the settlor."[26] But in this case, petitioners were not trustees under the terms of the February 2013 trust. Indeed, in that instrument, Mrs. Goizueta named herself as the initial trustee and Javier Goizueta and Olga Rawls as first successor trustees. By definition, a successor trustee is "[a] trustee who succeeds an earlier trustee, usually as provided in the trust agreement[,]"[27] but there is no evidence that Mrs. Goizueta relinquished her role as trustee of the February 2013 trust at any time prior to its revocation. Moreover, even if petitioners could be considered trustees under the February 2013 trust, that instrument imposed no fiduciary duties upon *any* trustee, as its terms explicitly provided that the trustees would have "no duties or obligations

---

[25] *Jackson v. Nowland*, 338 Ga. App. 614, 617 (1) (791 SE2d 190) (2016) (punctuation omitted); *accord Rose v. Waldrip*, 316 Ga. App. 812, 815 (1) (a) (730 SE2d 529) (2012).

[26] *Jackson*, 338 Ga. App. at 617 (1) (punctuation omitted).

[27] *Trustee*: *Successor Trustee*, BLACK'S LAW DICTIONARY 1519 (7th ed. 1999).

15

whatsoever during [Mrs. Goizueta's] lifetime." So, under the clear terms of the February 2013 trust, petitioners did not owe respondents any fiduciary duty.[28]

(b) *The Family Trust*. Respondents also allege that petitioners breached fiduciary duties owed under the Family Trust, specifically claiming that petitioners ignored their mother's intent that respondents receive the bequests outlined in Schedule B. But respondents' contention that petitioners disregarded Mrs. Goizueta's true intent relies upon an instrument that she revoked and ignores the Family Trust, which, as executed, provided that "assets of the trust . . . shall be distributed to or among such individuals . . . as the Trustee shall determine in its sole and absolute discretion." And we find nothing erroneous in the trial court's reliance on an

---

[28] *See Jackson*, 338 Ga. App. at 617-18 (1) (holding that clear language of trust provided evidence of settlor's intent as to when trust would terminate and trial court erred in finding language to be ambiguous); *see also* OCGA § 53-12-303 (b) ("A trustee of a revocable trust shall not be liable to a beneficiary for any act performed or omitted pursuant to written direction from a person holding the power to revoke, including a person to whom the power to revoke the trust is delegated."); RESTATEMENT (THIRD) OF TRUSTS, § 74 cmt. e (2007) ("For as long as, and to the extent that, the trust is revocable by the settlor and the settlor is legally competent . . ., the settlor may enforce the trust on behalf of all beneficiaries, and the trustee's duties are owed primarily to the settlor . . . .").

16

instrument that has not been revoked, but rather was irrevocable upon execution, in discerning Mrs. Goizueta's intent.[29]

In addition, as noted in the trial court's order, respondents lacked standing to assert a breach of any fiduciary duty that may have been imposed on petitioners as trustees of the Family Trust. Under OCGA § 53-12-20 (c), "[t]he requirement that a trust have a reasonably ascertainable beneficiary shall be satisfied if under the trust instrument the trustee or some other person has the power to select the beneficiaries based on a standard or in the discretion of the trustee or other person." And here, the Family Trust provided petitioners with such discretion. Nonetheless, because the Family Trust does not name all the specific beneficiaries, the class of potential beneficiaries is indefinite.[30] Given such circumstances, a trustee whom the settlor empowers with discretion to make bequests *may* choose beneficiaries but has no duty

---

[29] *See Jackson*, 338 Ga. App. at 617-18 (1) (holding that clear language of trust provided evidence of settlor's intent as to when trust would terminate, and trial court erred in finding language to be ambiguous).

[30] *See* RESTATEMENT (THIRD) OF TRUSTS, § 46 cmt. a ("A class of persons is indefinite under the rule of this Section if the identity of all individuals comprising its membership cannot be ascertained. Although it is possible to determine that certain persons fall within a class and that others do not, it may be impossible to determine all of the persons who fall within it. In such a situation, the class or group is indefinite.").

to do so.[31] Accordingly, the trial court was also correct in finding that respondents lack standing to assert a claim that petitioners breached a fiduciary duty under the Family Trust.

(c) *The Durable Power of Attorney.* Finally, respondents further maintain that petitioners breached duties they owed under the 2012 POA in two respects. Disregarding the POA's express provision that petitioners "exercise the powers granted [therein] only for [Mrs. Goizueta's] benefit . . . and as a fiduciary for [her]," respondents first claim that because the POA imbued petitioners with the power "to

---

[31] *See Egleston v. Trust Co. of Ga.*, 147 Ga. 313, 313-14 (93 SE 878) (1917) (holding that provision in will codicil that person not named for bequests by being overlooked by testator be liberally provided for before provision of any charitable object was unenforceable, because too indefinite and uncertain); RESTATEMENT (THIRD) OF TRUSTS, § 46 cmt. d, d (1) ("Occasionally, a testator leaves property to another upon an intended trust for members of an indefinite class to be selected by the devisee, intending thereby to impose upon the devisee, as trustee, a duty to make selections and to hold and administer the property in the meantime solely for the members of the class. This presents a problem . . . that similarly arises from the requirement that a trust have definite beneficiaries." However, "[t]hat the trustee cannot be required to select the beneficiaries, and that a court will not direct a recalcitrant trustee to make equal distribution to class members too indefinite to be ascertained, nor even remove and replace the trustee, does not mean that the trustee cannot be allowed to make the selections if willing to do so."); *see also Simpson v. Anderson*, 220 Ga. 155, 157-58 (137 SE2d 638) (1964) (noting that in private trusts, if beneficiaries are so uncertain or incapable of taking that they cannot be identified or cannot by legal or equitable proceedings claim benefit conferred on them, gift will fail and revert to donor or his heirs, but if gift is made for public charitable purpose, it will be sustained).

do anything that [Mrs. Goizueta] could do personally or as Trustee[,]" they became co-trustees of the February 2013 trust and, therefore, owed respondents fiduciary duties under that instrument. But in addition to ignoring the above-referenced terms of the POA, this argument also disregards that—in creating the February 2013 trust—Mrs. Goizueta specifically directed that petitioners would only serve as successor trustees and the trustee would have "no duties or obligations whatsoever during [her] lifetime." Thus, even if petitioners became co-trustees, they owed no duties to respondents until Mrs. Goizueta's passing, at which point the February 2013 had been revoked.[32]

Respondents also contend they may enforce the fiduciary duties that petitioners owed their mother under the POA, citing OCGA § 51-1-6, which provides: "When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." Additionally, they rely on OCGA § 51-1-8, which provides:

---

[32] *See Godwin v. Mizpah Farms, LLLP*, 330 Ga. App. 31, 42 (3) (c) (766 SE2d 497) (2014) ("As a general rule, a power of attorney merely authorizes another agent to do what the grantor principal could do with respect to the recited subject matter." (punctuation omitted)).

19

"Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action." But those statutes do not "create causes of action, but simply set forth general principles of tort law, authorizing the recovery of damages for the breach of a legal duty otherwise arising, though not expressly stated, under a statute or common law."[33] And respondents cite to no case or statutory authority supporting their novel theory that fiduciary duties not owed to them can, nonetheless, be derivatively enforced. Moreover, even if, by some tortured logic, respondents could enforce a fiduciary obligation owed under the POA, under OCGA § 10-6B-10 (a) (1), "[a] power of attorney shall terminate when . . .[t]he principal dies . . . ." Consequently, at the time respondents claim petitioners failed to carry out Mrs. Goizueta's wishes, *i.e.*, by not distributing trust property to them in the amounts stated in Schedule B, petitioners no longer owed Mrs. Goizueta any such duty. Accordingly, the trial court did not err in granting summary judgment in favor of petitioners as to respondents' breach-of-fiduciary duty claims.

---

[33] *Gobran Auto Sales, Inc. v. Bell*, 335 Ga. App. 873, 877 (2) (783 SE2d 389) (2016) (punctuation omitted).

For all these reasons, we affirm the trial court's grant of summary judgment.

*Judgment affirmed. Mercier and Colvin, JJ., concur*.